CITIZENS COAL COUNCIL, et al., Plaintiffs,

v.

Gale NORTON, Secretary, U.S. Department of the Interior, Defendant,

and

National Mining Association, Intervenor–Defendant.

No. CIV.A. 00–0274JR.

United States District Court, District of Columbia.

March 28, 2002.

James Dougherty, Washington, DC, Walton D. Morris Jr., Charlottesville, VA, Paul W. Edmondson, General Counsel, Elizabeth S. Merritt, Associate General Counsel, National Trust for Historic Preservation, Washington, DC, Howard I. Fox, Glenn P. Sugameli, Earthjustice Legal Defense Fund, Washington, DC, Counsel for Plaintiffs.

Ruth Ann Storey, Environment & Natural, Resources Division, General Litigation Section, Washington, DC, Counsel for Defendant.

Thomas C. Means, J. Michael Klise, Kristen L. Nathanson, Crowell & Moring LLP, Washington, DC, Counsel for Intervenor–Defendant.

## *MEMORANDUM*

ROBERTSON, District Judge.

The Surface Mining Control and Reclamation Act of 1977 (SMCRA), 30 U.S.C. §§ 1201 *et seq.*, prohibits "surface coal mining operations" in national parks and other protected areas. *Id.* § 1272(e). This case, the latest chapter in fifteen years of litigation over the definition of "surface coal mining operations," presents the question whether § 1272(e) also prohibits subsidence and underground mining activities that may cause subsidence in

those same parks and protected areas. The plaintiff organizations, whose members use parks and other protected areas, challenge the Secretary of the Interior's decision that § 1272(e) does *not* prohibit such activities. The National Mining Association, whose members mine or wish to mine coal beneath national parks and other protected areas, have intervened to defend the Secretary's decision. For the reasons set forth below, the plaintiffs' motion for summary judgment will be granted. The defendants' motion will be denied.

### Background

SMCRA established a comprehensive scheme for regulating strip mining and other surface mining techniques that disturb lands used for commercial, residential, recreational, and agricultural purposes. 30 U.S.C. §§ 1201, 1202. One of its goals was to encourage the development and application of underground mining technologies. *Id.* § 1202(k). Congress was nevertheless concerned enough about the surface effects of underground coal mining, including subsidence and water

pollution, that it wrote provisions into SMCRA requiring that subsidence from underground mining be prevented to the extent technologically and economically feasible, *id.* § 1266(b)(1), and (as of 1992) that operators repair or compensate the owners of surface rights for certain subsidence damage to homes and water sources, *id.* § 1309a.

SMCRA § 1272(e) bans "surface coal mining operations" outright in certain areas.[1] The question in this case is whether § 1272(e) also prohibits subsidence in those protected areas and underground mining activities that might lead to subsidence in those areas. The word "subsidence" does not appear in § 1272, but plaintiffs maintain—defendants disagree— that subsidence and activities leading to subsidence are included in the term "surface coal mining operations" as that term is used in § 1272(e) and defined in § 1291(28). The issue has been raised in previous litigation but never resolved on the merits. *National Wildlife Fed'n v. Babbitt*, 835 F.Supp. 654, 658–60, 668 (D.D.C.1993) (Flannery, J.); *In re Perma-*

---

1. The first part of § 1272 creates a procedure for state and federal authorities to designate certain areas as "unsuitable" for surface coal mining operations where reclamation is deemed not feasible. 30 U.S.C. § 1272(a)-(d). Subsection (e), however, bans new surface coal mining operations outright in certain areas considered particularly important or sensitive:

   [S]ubject to valid existing rights no surface coal mining operations except those which exist on August 3, 1977, shall be permitted—

   (1) on any lands within the boundaries of units of the National Park System, the National Wildlife Refuge Systems, the National System of Trails, the National Wilderness Preservation System, the Wild and Scenic Rivers System ... and National Recreation Areas ...

   (2) on any Federal lands within the boundaries of any national forest: *Provided, however,* That surface coal mining opera-

tions may be permitted on such lands if the Secretary finds that there are no significant recreational, timber, economic, or other values which may be incompatible with such surface mining operations and-

   (A) Surface operations and impacts are incident to an underground coal mine; or

   (B) [Another exception applies];

   (3) which will adversely affect any publicly owned park or places included in the National Register of Historic Sites [subject to certain exceptions];

   (4) within one hundred feet of the outside right-of-way line of any public road [subject to certain exceptions]; or

   (5) within three hundred feet from any occupied dwelling, unless waived by the owner thereof, nor within three hundred feet of any public building, school, church, community, or institutional building, public park, or within one hundred feet of a cemetery.

   *Id.* § 1272(e).

*nent Surface Min. Regulation Litigation,* 620 F.Supp. 1519, 1552–54 (D.D.C.1985), *aff'd in part, rev'd in part on other grounds sub nom. National Wildlife Fed'n v. Hodel,* 839 F.2d 694 (D.C.Cir. 1988). The Department of Interior has sent "conflicting signals" in various administrative actions. *Babbitt,* 835 F.Supp. at 658–60 (tracing the history in detail).

After Judge Flannery concluded in the *Babbitt* case that the issue needed to be resolved pursuant to notice and comment rulemaking, *id.* at 668, the Secretary initiated a formal rulemaking proceeding. That proceeding culminated in the issuance of a final rule that subsidence, and underground activities that may lead to subsidence, are outside the term "surface coal mining operations" as used in § 1272(e) and defined in § 1291(28). 30 C.F.R. § 761.200(a); 64 Fed.Reg. 70,838, 70,843 (Dec. 17, 1999). Underground mining is thus not banned in the areas protected by § 1272(e), the Secretary concluded, although such mines must comply with § 1266(b) and § 1309a by adopting measures to prevent subsidence to the extent technologically and economically feasible and by repairing or compensating for damages to homes and water sources. 64 Fed. Reg. at 70,843.

Plaintiffs filed this suit in February 2000, seeking a declaratory judgment that 30 C.F.R. § 761.200 and the Secretary's underlying statutory interpretation violate SMCRA and the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), as arbitrary, capricious, and otherwise inconsistent with law. *See* 30 U.S.C. § 1276(a)(1).

### *Analysis*

■ A rule issued after notice-and-comment rulemaking interpreting a statute that the Secretary administers is subject to the familiar two-step analysis outlined in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *United States v. Mead Corp.,* 533 U.S. 218, 230, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001). If the underlying statute speaks directly to the precise question at issue, the agency and the Court must give effect to Congress' unambiguously expressed intent. *Chevron,* 467 U.S. at 842–43, 104 S.Ct. 2778; *Pharmaceutical Research & Mfrs. of Am. v. Thompson,* 251 F.3d 219, 224 (D.C.Cir.2001). If the statute is silent or ambiguous, the agency's interpretation is entitled to deference if it is a reasonable construction, even if there may be other reasonable, or more reasonable, views. *Chevron,* 467 U.S. at 842–43, 104 S.Ct. 2778; *National Rifle Ass'n of Am., Inc. v. Reno,* 216 F.3d 122, 132 (D.C.Cir.2000).

■ The regulation at issue states that "[s]ubsidence due to underground coal mining is not included in the definition of surface coal mining operations under section 701(28) of the Act ... and therefore is not prohibited in areas protected under section 522(e) of the Act." 30 C.F.R. § 761.200(a). The statutory definition on which this conclusion rests states:

"[S]urface coal mining operations" means—

(A) *activities conducted on the surface of lands in connection with a surface coal mine or subject to the requirements of section 1266 of this title surface operations and surface impacts incident to an underground coal mine* .... Such activities include excavation for the purpose of obtaining coal including such common methods as contour, strip, auger, mountaintop removal, box cut, open pit, and area mining, the uses of explosives and blasting, and in situ distillation or retorting, leaching, or other chemical or physical processing, and the cleaning, concentrating, or other processing or preparation, loading of coal for interstate commerce at or near

the mine site: *Provided, however, That* such activities do not include the extraction of coal incidental to the extraction of other minerals . . . and

(B) *the areas upon which such activities occur or where such activities disturb the natural land surface.* Such areas shall also include any adjacent land the use of which is incidental to any such activities . . . and excavations, workings, impoundments, dams, ventilation shafts, entryways, . . . stockpiles . . . holes or depressions, repair areas, storage areas, processing areas, shipping areas and other areas upon which are sited structures, facilities, or other property or materials on the surface, resulting from or incident to such activities.

30 U.S.C. § 1291(28) (emphasis added). The Secretary parses the first part of this definition, underscored above, to read "activities conducted on the surface of lands in connection with [1] a surface coal mine or [2] subject to the requirements of section 1266 of this title[,] surface operations and surface impacts incident to an underground coal mine . . . ." *Id.* § 1291(28)(A). She notes the repeated use of the phrase "such activities" in the rest of the definition and concludes that it refers to the two kinds of "activities" she has teased out of the (unpunctuated) first sentence.

■ Particular statutory provisions should not be examined in isolation because the meaning or ambiguity of particular words or phrases may only become evident when placed in context. *National Rifle Ass'n of Am., Inc.,* 216 F.3d at 127. Courts must exhaust the traditional tools of statutory construction by examining a statute's text, structure, purpose, and legislative history in determining whether Congress has spoken to the precise question at issue. *Pharmaceutical Research & Mfrs. of Am.,* 251 F.3d at 224. In the context of SMCRA's broader structure and purpose, the meaning of "surface coal min-

ing operations" is clearly different from what the Secretary has found it to be.

■ The Secretary's reading of the critical first part of § 1291[28] is not the most natural one. As the Court of Appeals observed twelve years ago in *National Wildlife Federation v. Hodel,* 839 F.2d 694, 753 (D.C.Cir.1988), "The most natural reading of the statute as a whole, and the definition in [§ 1291(28) ] in particular . . . suggests that 'surface coal mining operations' encompasses both surface coal mines and the surface effects of underground coal mines . . . ." This "most natural reading" becomes apparent with the addition of three commas. Thus, " 'surface coal mining operations' means—(A) activities conducted on the surface of lands in connection with a surface coal mine[,] or[,] subject to the requirements of section 1266 of this title[,] surface operations and surface impacts incident to an underground coal mine . . . ."

This "most natural reading" is consistent with the legislative history of § 1291[28], which, although limited, specifically notes that "[t]he effect of this definition is that . . . surface impacts of underground coal mining are subject to regulation under the Act." S.Rep. No. 95–128, at 98 (1977); *see also id.* at 49 ("surface coal mining operations—including . . . the surface effects of underground mining"); *id.* at 71 ("surface coal mining operations, which include, by definition surface impacts incident to underground coal mines"); H.R.Rep. No. 95–218, at 57 (1977) ("system of coal mining regulation . . . [c]overing all coal surface mining . . . and the surface impacts from underground mines and coal processing"); *id.* at 93 ("the act covers surface impacts of underground coal mining concurrently with those of surface mining").

The "most natural reading" also makes sense of the qualifier "subject to the requirements of section 1266," for it is section 1266 that requires the development of

substantive standards for underground mining (§ 1266(b)) and specifically states that SMCRA provisions written for surface mining relating to state and federal programs, permits, enforcement, and public, administrative, and judicial review will apply as well to "surface operations and surface impacts incident to an underground coal mine," with such modifications by regulation as are necessary to accommodate the distinct differences in underground mining (§ 1266(d)).

The Secretary's interpretation of § 1291(28) would, by contrast, require an *unnatural* reading. It would limit references to "surface coal mining operations" to "activities conducted on the surface of lands in connection with . . . surface operations and surface impacts incident to an underground coal mine," while excluding the surface impacts themselves. That reading is not only strained on the face of § 1291[28], but it is also inconsistent with the legislative history set forth above; with Congress's stated intent to regulate subsidence, water pollution, and other surface environmental side effects from underground mining, H.R.Rep. No. 95–218, at 125–27; S.Rep. No. 95–128, at 84–85; and with the canon of statutory construction that requires each word to be given effect, if possible. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979). The Secretary's reading, indeed, would render useless seventeen words in the first part of § 1291(28) as bracketed below: "activities conducted on the surface of lands in connection with a surface coal mine or [subject to the requirements of section 1266 of this title surface operations and surface impacts incident to] an underground coal mine," leaving only "activities conducted on the surface of lands in connection with a surface coal mine or . . . an underground coal mine." 30 U.S.C. § 1291(28).

Once the "most natural reading" is given effect so that " 'surface coal mining operations' encompasses both surface coal mines and the surface effects of underground coal mines," *National Wildlife Fed'n v. Hodel*, 839 F.2d 694, 753 (D.C.Cir.1988), it becomes clear both that Congress spoke clearly on the subject of mining beneath national parks and other protected areas, and that the Secretary's ruling on the coverage of § 1272 is contrary to the statute. Section 1272(e) bans "surface coal mining operations" on national parks and wilderness areas, historic sites, and within a certain radius of roads, public buildings, and occupied dwellings. It provides an express exception for such operations in national forests if "surface operations and impacts are incident to an underground coal mine" and certain other conditions are met. 30 U.S.C. § 1272(e)(2)(a). The House committee report also emphasizes that "[s]urface operations and impacts incident to an underground coal mine are permitted" under this provision. H.R.Rep. No. 95–218, at 69; *see also id.* at 126 (noting that subsidence has relatively little impact on timberlands, but causes substantial damage to homes, roads, schools, and commercial buildings in developed areas).[2]

---

**2.** The Senate bill did not create a national forest exception where surface operations and impacts were incident to an underground mine, S.Rep. No. 95–128, at 39 (text of proposed § 422(e)), and the committee report states at one point that surface coal mining operations would be banned "within 500 feet of an active underground mine," *id.* at 55. Such a prohibition would be inconsistent with a definition of "surface coal mining operations" that included surface operations and impacts incident to an underground mine, but it does not appear in the actual text of the bill or other sections of the Senate report. *Id.* at 39 (text of proposed § 422(e)), 94–95 (discussion of § 422(e)). Therefore, it does not appear to have been adopted by the Senate committee, the Senate, or the House, and is of little if any assistance in determining congressional intent.

*There would be no need for Congress to create an exception authorizing surface operations and surface impacts incident to underground coal mines in national forests if § 1272(e) did not ban them from national parks and the other protected areas in the first place. See also* S.Rep. No. 95–128, at 49 (stating that the Act was intended to "assure that surface coal mining operations—including ... the surface effects of underground mining—are conducted so as to prevent or minimize degradation to the environment, and that such surface coal mining operations are not conducted where reclamation is not feasible according to the terms and conditions of the Act").[3]

Based on the statutory text, purpose, structure, and legislative history, I find that Congress has expressed its intent clearly on the precise point at issue here and that the Secretary's interpretation of § 1291(28) and § 1272(e) is contrary to law. An appropriate order accompanies this memorandum.

### *ORDER*

For the reasons set forth in the accompanying memorandum, it is this ___ day of March 2002,

ORDERED that plaintiffs' motion for summary judgment [# 31] is **granted.** And it is

FURTHER ORDERED that the defendants' cross motions for summary judgment [# 32, # 33] are **denied.**

**3.** Section 1272 also falls within § 1266(d)'s mandate that SMCRA provisions "relating to State and Federal programs [and] permits ... shall be applicable to surface operations and surface impacts incident to an underground coal mine," since it imposes requirements on federal and state regulators, 30 U.S.C. § 1272(a)-(d); *see also* § 1253(a)(5) (requiring states seeking exclusive regulatory authority to establish a process for designating lands as unsuitable under § 1272), and bans the issuance of permits for mining on protected lands, *id.* § 1272(e); *see also* § 1260(b)(4) (permits shall not be granted for lands designated as unsuitable under § 1272).

Another provision of § 1266 overlaps somewhat with § 1272 by authorizing state and federal regulators to suspend underground coal mining under or adjacent to developed areas, commercial and industrial buildings, and major impoundments or permanent streams if they find imminent danger to inhabitants. *Id.* § 1266(c). The two can and should be reconciled, *Detweiler v. Pena*, 38 F.3d 591, 594 (D.C.Cir.1994), because § 1266(c) applies to grandfathered operations and to sites and hazards not covered by § 1272(e).