Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued April 7, 2003          Decided June 3, 2003

No. 02-5136

CITIZENS COAL COUNCIL, ET AL.,
APPELLEES/CROSS–APPELLANTS

v.

GALE A. NORTON, SECRETARY OF THE INTERIOR, AND
NATIONAL MINING ASSOCIATION,
APPELLANT/CROSS–APPELLEES

Consolidated with
02–5137, 02–5190, 02–5232, 02–5244, 02–5245

Appeals from the United States District Court
for the District of Columbia
(No. 00cv00274)

*Kathryn E. Kovacs*, Attorney, U.S. Department of Justice, argued the cause for federal appellant/cross-appellee Secre-

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

tary of the Interior. With her on the briefs were *William B. Lazarus* and *Robert H. Oakley*, Attorneys.

*Thomas C. Means* argued the cause for appellant/cross-appellee National Mining Association. With him on the briefs were *J. Michael Klise*, *Kirsten L. Nathanson*, and *Harold P. Quinn, Jr.*

*Walton D. Morris, Jr.*, argued the cause for appellees/cross-appellants. With him on the briefs were *Paul W. Edmondson, Elizabeth S. Merritt, Howard I. Fox,* and *Glenn P. Sugameli.*

*Gregory E. Conrad* and *Christopher B. Power* were on the brief for *amicus curiae* Interstate Mining Compact Commission in support of the Secretary of the Interior and the National Mining Association. *Henry M. Ingram* entered an appearance.

Before: Sentelle and Rogers, *Circuit Judges,* and Silberman, *Senior Circuit Judge.*

Opinion for the Court filed by *Circuit Judge* Sentelle.

Sentelle, *Circuit Judge:* This is an appeal by the Secretary of the Interior and intervenor National Mining Association ("NMA") from a judgment of the District Court. The District Court held that the Secretary's interpretation of the Surface Mining Control and Reclamation Act's ("SMCRA") section 701(28), 30 U.S.C. § 1291(28) (2000), to exclude subsidence from the definition of "surface coal mining operations" regulated under section 522(e) of the Act, 30 U.S.C. § 1272(e), was contrary to the law and therefore invalid. Because we find that Congress did not speak unambiguously on this precise issue in the SMCRA and because we find the Secretary's interpretation to be reasonable, we defer to the Secretary and reverse the District Court.

## I. Background

### A. The Litigation

This case began with Citizens Coal Council's ("CCC") challenge to the Secretary of the Interior's final rulemaking

action by which she promulgated the regulation contained in 30 C.F.R. § 761.200 (2003). The challenged regulation is an interpretive rule, based on sections 701(28) and 522(e) of the SMCRA, 30 U.S.C. § 1201, *et seq*. The regulation states:

> 761.200 Interpretive rule related to subsidence due to underground coal mining in areas designated by Act of Congress. OSM has adopted the following interpretation of rules promulgated in part 761.
>
> (a) *Interpretation of § 761.11—Areas where mining is prohibited or limited. Subsidence due to underground coal mining is not included in the definition of surface coal mining operations under section 701(28) of the Act and § 700.5 of this chapter and therefore is not prohibited in areas protected under section 522(e) of the Act.*

30 C.F.R. § 761.200. CCC sought review of this rulemaking in District Court, after exhausting its administrative remedies. It claimed that the Secretary's interpretation of the cited provisions of the SMCRA was contrary to the clear law, and therefore, unworthy of any deference by the courts. As a remedy, CCC requested that the court vacate the regulation and instruct the Secretary to impose instead, a regulation stating that subsidence was included within 701(28)'s definition. The District Court granted CCC's motion for summary judgment holding that "Congress has expressed its intent clearly on the precise point at issue here and that the Secretary's interpretation of § [701(28)] and § [522(e)] is contrary to law." *Citizens Coal Council v. Norton*, 193 F. Supp. 2d 159, 165 (D.D.C. 2002). The District Court then remanded the regulation to the Secretary without instruction.

CCC filed a notice of appeal on April 11, 2002, and intervenor NMA filed its notice the following day. On June 5, 2002, the District Court granted the appellant's motion to stay the remand order, but vacated the regulation and stayed its judgment pending appeal. *See Citizens Coal Council v. Babbitt*, No. 00–0274 (June 5, 2002). On June 6, 2002, the Secretary filed a notice of appeal of both rulings. In the present case, the Secretary and NMA appeal the District Court's ruling that the regulation was invalid and its subse-

quent vacation of the regulation, and CCC appeals the District Court's refusal to grant the full relief it requested.

### B. The Statutory Scheme

We recognize from the outset that the SMCRA is a complex and often puzzling statute, in many cases raising a variety of questions as to its correct interpretation. SMCRA was enacted in an effort by Congress to both "protect society and the environment from the adverse effects of surface coal mining operations" and to "assure that the coal supply essential to the Nation's energy requirements, and to its economic and social well-being is provided and strike a balance between protection of the environment and agricultural activity and the Nation's need for coal as an essential source of energy." 30 U.S.C. § 1202(a), (f). As the District Court recognized and the parties do not dispute, the focus of the regulation in SMCRA was primarily on the surface mining techniques, such as strip-mining, and one of its goals was to encourage the development and application of underground mining technologies as an alternative less likely to disturb lands used for other activities. *See Citizens Coal*, 193 F. Supp. 2d at 161 (citing 30 U.S.C. §§ 1201, 1202(k)).

To this purpose, SMCRA section 522(e) prohibits "surface coal mining operations" with certain exceptions, in a number of protected areas, particularly within the boundaries of the national parks system, national forests, and public parks and historic sites. In addition, these operations are also prohibited "within [100] feet of the outside right-of-way line of any public road"; "within [300] feet from any occupied dwelling, unless waived by the owner thereof"; and "within [300] feet of any public building, school, church, community, or institutional building, public park, or within [100] feet of a cemetery." 30 U.S.C. § 1272(e)(4), (5).

SMCRA section 701(28) defines "surface coal mining operations" as follows:

(A) activities conducted on the surface of lands in connection with a surface coal mine or subject to the re-

quirements of section 1266 of this title surface operations and surface impacts incident to an underground coal mine, the products of which enter commerce or the operations of which directly or indirectly affect interstate commerce. Such activities include excavation for the purpose of obtaining coal including such common methods as contour, strip, auger, mountaintop removal, box cut, open pit, and area mining, the uses of explosives and blasting, and in situ distillation or retorting, leaching or other chemical or physical processing, and the cleaning, concentrating, or other processing or preparation, loading of coal for interstate commerce at or near the mine site . . . and

(B) the areas upon which such activities occur or where such activities disturb the natural land surface. Such areas shall also include any adjacent land the use of which is incidental to any such activities, all lands affected by the construction of new roads or the improvement or use of existing roads to gain access to the site of such activities and for haulage, and excavations, workings, impoundments, dams, ventilation shafts, entryways, refuse banks, dumps, stockpiles, overburden piles, spoil banks, culm banks, tailings, holes or depressions, repair areas, storage areas, processing areas, shipping areas and other areas which are sited structures, facilities, or other property or materials on the surface, resulting from or incident to such activities[.]

30 U.S.C. § 1291(28). SMCRA section 516(a) requires the Secretary to promulgate rules and regulations directed toward "the surface effects of underground coal mining operations" embodying the requirements of section 516(b), but instructs the Secretary, in adopting such rules, to "consider the distinct difference between surface coal mining and underground coal mining." 30 U.S.C. § 1266(a). The permit requirement of section 516(b) mentions subsidence specifically, in contrast to sections 522 and 701(28).

516(b): Permit requirements

Each permit issued under any approved State or Federal program pursuant to this chapter and relating to underground coal mining shall require the operator to—

(1) adopt measures consistent with known technology in order to prevent subsidence causing material damage to the extent technologically and economically feasible, maximize mine stability, and maintain the value and reasonably foreseeable use of such surface lands, except in those instances where the mining technology used requires planned subsidence in a predictable and controlled manner: *Provided*, That nothing in this subsection shall be construed to prohibit the standard method of room and pillar mining;

30 U.S.C. § 1266(b)(1). Section 516(c) extends the Secretary's authority to regulate underground coal mining if it creates a danger to inhabitants.

c) Suspension of underground coal mining operations in urbanized areas

In order to protect the stability of the land, the regulatory authority shall suspend underground coal mining under urbanized areas, cities, towns, and communities and adjacent to industrial or commercial buildings, major impoundments, or permanent streams if he finds imminent danger to inhabitants of the urbanized areas, cities, towns, and communities.

30 U.S.C. § 1266(c). Section 516(d) extends the subchapter to cover "surface operations and surface impacts incident to underground coal mining operations."

The provisions of this subchapter relating to State and Federal programs, permits, bonds, inspections and enforcement, public review, and administrative and judicial review shall be applicable to surface operations and surface impacts incident to an underground coal mine with such modifications to the permit application requirements, permit approval or denial procedures, and bond requirements as are necessary to accommodate the dis-

tinct difference between surface and underground coal mining.

30 U.S.C. § 1266(d).

## II.  Analysis

We review the Secretary's interpretation of the provisions of the SMCRA, a statute she administers, under the analysis articulated in *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).  The two-step test of *Chevron* requires, first, that both the agency and the courts give effect to Congress's unambiguously expressed intent if the underlying statute speaks directly to the precise question at issue.  *Chevron*, 467 U.S. at 842–43.  In this first analytical step, the courts use "traditional tools of statutory interpretation–text, structure, purpose, and legislative history." *Pharm. Research & Mfrs. of Am. v. Thompson*, 251 F.3d 219, 224 (D.C. Cir. 2001).  If, however, the statute is "silent or ambiguous with respect to the specific issue" the court must defer to the agency's interpretation if it is reasonable.  *Chevron*, 467 U.S. at 843.  Because we find that the term "surface impacts incident to an underground coal mine" as it appears in section 701(28) does not unambiguously include subsidence, the second step of *Chevron* requires that we defer to the Secretary's reasonable interpretation of the statute and reverse the District Court.  *See NMA v. Dep't of the Interior*, 105 F.3d 691, 694 (D.C. Cir. 1997).

We begin, as always, with the plain language of the statute in question.  The Secretary interprets the definition of "surface coal mining operations" contained in 701(28), and thereby prohibited in 522(e), to exclude subsidence.  The Secretary first argues that the plain meaning of the word "operations" suggests a reference to some human activity, and not to a possible effect of underground mining, like subsidence.  *See Webster's Third New International Dictionary* 1581 (1971) (defining "operation" as "doing or performing").  If 701(28)'s definition ended after its first phrase, "activities conducted on the surface of lands in connection with a surface coal mine or subject to the requirements of section 516 surface opera-

tions," this interpretation might be more clearly compelled. However, as CCC points out, the phrase which follows: "surface operations and surface impacts incident to an underground coal mine" could add significantly to the scope of the term "operations" as used in this context.

As the District Court noted, the Secretary essentially parses the definition to read "activities conducted on the surface of lands in connection with [1] a surface coal mine or [2] subject to the requirements of section 1266 of this title[,] surface operations and surface impacts incident to an underground coal mine . . .". *Citizens Coal*, 193 F. Supp. 2d at 163 (citing 30 U.S.C. § 1291(28)(A)). The Secretary supports this interpretation with the definition's next sentence which begins with the phrase "[s]uch activities." This phrase is repeated throughout the remainder of the definition, and is defined within the provision by the examples of activities listed, *e.g.*, excavation; physical or chemical processing; and loading for interstate transport. *See* 30 U.S.C. § 1291(28)(A). The Secretary therefore concludes that the opening sentence refers to these "activities" only. The District Court held that this reading was not "the most natural" one, in light of the legislative history and the overall purpose of the Act. *See Citizens Coal*, 193 F. Supp. 2d at 163–64. The reading advanced as the "most natural" by CCC and accepted by the District Court "becomes apparent with the addition of three commas" as follows: " 'surface coal mining operations' means—(A) activities conducted on the surface of lands in connection with a surface coal mine[,] or [,] subject to the requirements of section 1266 of this title [,] surface operations and surface impacts incident to an underground coal mine . . . ." *Id*. at 163. The District Court and CCC therefore read 701(28) to mean the surface coal mining operations—prohibited in areas specified by 522(e)—to include as a separate matter "surface impacts" incident to an underground mine, which must then include subsidence.

We need not disavow the District Court's determination that CCC's tendered interpretation is the more natural one in order to reverse the District Court and uphold the Secretary. As noted by the District Court we have, on a previous

occasion, observed that "[t]he most natural reading of the [SMCRA] as a whole, and the definition in [§ 1291(28)] in particular . . . then suggests that 'surface coal mining operations' encompasses both surface coal mines and the surface effects of underground mines." *Citizens Coal*, 193 F. Supp. 2d at 163 (quoting *Nat'l Wildlife Fed'n v. Hodel*, 839 F.2d 694, 753 (D.C. Cir. 1988)). Even assuming the correctness of our reasoning and that of the District Court, the ambiguity of the statute in combination with the *Chevron* doctrine eclipses the ability of the courts to substitute their preferred interpretation for an agency's reasonable interpretation when that agency is the entity authorized to administer the statute in question. *See, e.g., NMA v. Babbitt*, 172 F.3d 906, 916 (D.C. Cir. 1999) ("If we were interpreting the statute *de novo*, we might well agree that appellant has the better argument. But we are not. And although the government's reading is a bit of a stretch, we think it passes the *Chevron* test"). While we do not find that the language of the definition of "surface coal mining operations" compels the exclusion of subsidence from its scope, neither do we find that the definition compels its inclusion. Therefore, we endeavor to resolve this issue under the second analytical step of *Chevron* because Congress has not spoken unambiguously on this precise question. We find the Secretary's interpretation, while not necessarily the most natural one, is reasonable, and therefore we defer to it. *Cf. Young v. Cmty. Nutrition Inst.*, 476 U.S. 974, 980–81. (1986). (Upholding the FDA's interpretation of an ambiguous statutory provision, finding that although the lower court's "reading of the statute may seem to be the more natural interpretation . . . the phrasing . . . admits of either respondents' or petitioners' reading of the statute . . . . We find the FDA's interpretation . . . to be sufficiently rational to preclude a court from substituting its judgment for that of the FDA.").

Both parties argue that the legislative history of the SMCRA supports its interpretation. CCC relies on several statements in the Senate and House reports relating to SMCRA's promulgation. According to CCC, the Senate report indicates that SMCRA was addressed to "surface coal

mining operations-including exploration activities and the surface effects of underground mining." S. REP. NO. 95–128, at 49 (1977). CCC contends that the report clarifies that those effects include subsidence, quoting a discussion in the report on the environmental hazards posed by coal mining: "Similar hazards also occur from the surface effects of underground coal mining, including the dumping of coal waste piles, subsidence and mine fires." *Id.* at 50. Additionally, the report states that the Act's initial regulatory requirements extended to "[a]ll surface coal mining operations, which include, by definition surface impacts incident to underground coal mines." *Id.* at 71. The District Court relied on this passage from the report to support its position that section 522(e) applied to subsidence.

> 'Surface coal mining operations' is so defined to include not only traditionally regarded coal surface mining activities but also surface operations incident to underground coal mining, and exploration activities. The effect of this definition is that coal surface mining and surface impacts of underground coal mining are subject to regulation under this Act.

*Id.* at 98. The court found that the references in the reports to "surface effects" of underground coal mining, and "surface impacts" of underground coal mining must include subsidence. *See Citizens Coal*, 193 F. Supp. 2d at 163–64. Finally, CCC contends that the House report also supports its position in a discussion entitled "Surface Impacts of Underground Mines," stating:

> The environmental problems associated with underground mining for coal which are directly manifested on the land surface are addressed in section [516] and other such sections which may have application. These problems include surface subsidence.

H.R. REP. NO. 95–218, at 125–26 (1977). Essentially, the CCC interprets the legislative history's use of the phrase "surface

impacts" which appears in 701(28) to necessarily include subsidence.

The Secretary counters with the argument that the legislative history does show that Congress had an intention to regulate subsidence within the SMCRA, but intended to limit that regulation to section 516. More importantly, this interpretation is consistent with the language of the statute. Section 516 is the only section in the statute in which subsidence is specifically mentioned. This demonstrates that Congress specifically stated that subsidence was being dealt with in a provision when its intention was to include subsidence under that section of the SMCRA. The Secretary argues that the House report on section 516 illustrates Congress's intention to authorize the Secretary to regulate subsidence in that section, rather than prohibit it entirely by way of section 522(e).

> Surface subsidence has a different effect on different land uses. Generally, no appreciable impact is realized on agricultural land and similar types of land and productivity is not affected. On the other hand when subsidence occurs under developed land such as an urbanized area, substantial damage results to surface improvements be they private homes, commercial buildings or public roads and schools.... It is the intent of this section to provide the Secretary with the authority to require the design and conduct of underground mining methods to control subsidence to the extent technologically and economically feasible in order to protect the value and use of surface lands.

H.R. REP. NO. 95–218, at 126 (1977). The Secretary reiterates that Congress did not discuss subsidence as being among the "impacts" of underground mining that are prohibited in section 522(e) areas. The Secretary also noted that she had concluded during the promulgation of the regulation at issue that the passage from the Senate report on which the District Court specifically relied was "imprecise" and of questionable precedential value because it states that exploration activities are included in the definition of "surface coal mining operations" even though the statute expressly provides to the

contrary. *See* 64 Fed. Reg. 70,844–45 (citing 30 U.S.C. § 1291(28)(A)). Furthermore, the Secretary points out that the Senate report on section 522(e) notes that "surface coal mining" is prohibited within the specified distances of public roads, occupied buildings, and active underground mines "for reasons of public health and safety." S. Rep. No. 95–128, at 55. The Secretary posits that to accomplish that purpose, 522(e) need not prohibit subsidence, because underground mines must already meet the requirements of section 516, which prevents almost all risks to public health and safety.

Taken together, as is so often the case, legislative history on which both parties rely is at best inconclusive as to either interpretation. As Judge Leventhal once observed, reviewing legislative history is like "looking over a crowd and picking out your friends." Patricia M. Wald, *Some Observations on the Use of Legislative History in the 1981 Supreme Court Term*, 68 Iowa L. Rev. 195, 214 (1983). This inconclusiveness underscores our conclusion that the statute is ambiguous on the question of whether subsidence is included within the prohibitions in 522(e). In addition, one amendment to the statute since its promulgation bolsters the reasonableness of the Secretary's interpretation. In 1992, Congress added section 720 to the SMCRA, an amendment entitled "Subsidence," which provides compensation for property owners who suffer material damage caused by subsidence to "occupied residential dwelling and structures related thereto, or non-commercial building due to underground coal mining operations." 30 U.S.C. § 1309a(a)(1). Intervenor NMA argues that the passage of this section demonstrates that Congress was aware that SMCRA does not prohibit subsidence in section 522(e) areas and therefore added the section to provide a remedy for property owners damaged by this result of an underground mining operation. CCC argues that the addition of this provision does not foreclose their interpretation because section 522(e)'s alleged prohibition of subsidence does not apply to mines operating pursuant to valid existing rights as of August 3, 1977, and section 720 offers compensation to property owners damaged by these mines, as well as to those who have waived 522(e)'s protections, or

where subsidence damage occurs from a mine more than 300 feet away from protected structures, and thereby outside 522(e)'s buffer zone. Nothing in the statute or in section 720 supports CCC's arguments, and a far more plausible explanation for the provision is that it provides a remedy for subsidence damage, because subsidence was not already prohibited by section 522(e), as the Secretary argues. While this section does not, in combination with the others, resolve all ambiguity on the precise issue in question, it supports the reasonableness of the Secretary's interpretation.

Finally, we do not find compelling the argument drawn by CCC from a footnote in the District Court's opinion. At the end of its opinion, the court added the note, which reads in pertinent part: "[s]ection [522] also falls within § [516(d)]'s mandate that SMCRA provisions 'relating to State and Federal programs [and] permits . . . shall be applicable to surface operations and surface impacts incident to an underground coal mine,' since it imposes requirements on federal and state regulators. . . ." *Citizens Coal*, 193 F. Supp. 2d at 165 n.3. The District Court offered no further reasoning or explanation in support of this conclusion. CCC argues that this footnote is an alternative holding meaning that section 516(d), by referencing provisions "relating to . . . permits" unambiguously requires the Secretary to apply section 522(e) to protect against subsidence, simply because of the use of the word "permitted" in that later section. We disagree.

There is certainly a colorable difference between the noun "permit" and the verb "permitted." The SMCRA contains a number of provisions which do deal directly and specifically with "Permits." For example, section 506, 30 U.S.C. § 1256, is entitled "Permits" and provides for the terms, termination, and renewal of permits. The following section 30 U.S.C. § 1257 is entitled "Application requirements" and provides for the fee and content requirements of the permits. These sections stand in contrast to section 522(e) which provides for a number of prohibitions, and uses the verb "permitted" simply to describe the geographical limitations to which the Secretary is bound when "[d]esignating areas unsuitable for surface coal mining," as the title of the section instructs. *See*

30 U.S.C. § 1272(e) (no surface coal mining operations . . . shall be permitted—(1) on any lands within the boundaries of units of the National Park System . . . (2) on any Federal lands within the boundaries of any national forest . . . (3) which will adversely affect any publicly owned park . . . (4) within 100 feet of the outside right-of-way line of any public road . . . (5) within 300 feet from any occupied dwelling . . . .). Thus, the "permit" argument based on section 516(d) has no compelling force on the interpretation of section 522(e).

### III.   Conclusion

For the reasons explained above, we find that the definition of "surface coal mining operations" in SMCRA section 701(28) is ambiguous as to whether Congress intended it to include subsidence, and therefore, whether subsidence is among the prohibitions contained in section 522(e) is likewise ambiguous. We conclude that the Secretary's interpretation, albeit perhaps not the "most natural" reading, is a reasonable one, and therefore we defer to that interpretation in accordance with the requirements of *Chevron*. We reverse the decision of the District Court and uphold the validity of the regulation.