# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued May 7, 2014           Decided June 17, 2014

No. 13-5176

ALL PARTY PARLIAMENTARY GROUP ON EXTRAORDINARY
RENDITION, ET AL.,
APPELLANTS

v.

UNITED STATES DEPARTMENT OF DEFENSE, ET AL.,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-cv-02375)

---

*Dominic F. Perella* argued the cause for appellants. With him on the briefs were *Audrey E. Moog*, *Jonathan L. Abram*, and *Mary H. Wimberly*.

*Charles W. Scarborough*, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief were *Stuart F. Delery*, Assistant Attorney General, *Ronald Machen*, U.S. Attorney, and *Matthew Collette*, Attorney.

Before: TATEL, GRIFFITH, and PILLARD, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: Under the Freedom of Information Act, although generally any legal entity may request records from federal agencies, U.S. intelligence agencies are prohibited from releasing records to foreign government entities or to their "representatives." In this case, a member of the British House of Commons, an informal British parliamentary caucus, and an American lawyer representing both all filed FOIA requests seeking various records from the CIA and other intelligence agencies. The agencies denied these requests, claiming that the requesters all qualified as "representatives" of the British government. The district court agreed and dismissed their suit to compel disclosure. For the reasons stated in this opinion, we reverse.

## I.

Appellant Andrew Tyrie is a member of the British Parliament and co-chair of Appellant the All Party Parliamentary Group on Extraordinary Rendition ("APPG"), an informal parliamentary caucus. Seeking to expose the United Kingdom's alleged involvement in extraordinary rendition, Tyrie and the APPG, along with their American lawyer, Appellant Joe Cyr, filed FOIA requests with various federal agencies, including some—the CIA and components of the Departments of Defense, Justice, State, and Homeland Security—that are part of the "intelligence community." *See* 50 U.S.C. § 3003(4) (listing agencies that comprise the "intelligence community"). Declining to release relevant records, these agencies invoked FOIA's so-called Foreign Government Entity Exception. That exception—unique among FOIA provisions in that it limits access based on the identity of the requester rather than the content of the requested records—precludes intelligence agencies from "mak[ing] any record available . . . to—(i) any government entity, other than a State, territory, commonwealth, or district of

the United States, or any subdivision thereof; or (ii) a representative of a government entity described in clause (i)." 5 U.S.C. § 552(a)(3)(E). According to the intelligence agencies, all three FOIA requesters qualify as "representatives" of the British government.

The FOIA requesters sued to compel disclosure. They argued that in order to qualify as a "representative" of a foreign government entity, the FOIA requester must be an agent of that entity, and because they had no authority to file these requests on behalf of the British government, the intelligence agencies could not invoke the Foreign Government Entity Exception.

The district court dismissed the complaint, reasoning that "the term 'representative' is not synonymous with 'agent' for the purposes of [FOIA] . . . , and when Congress uses different words a court must assume that the difference was intentional." *All Party Parliamentary Group on Extraordinary Rendition v. U.S. Department of Defense*, 851 F. Supp. 2d 169, 175 (D.D.C. 2012). Finding that Tyrie "wields the power to act with the government's imprimatur," the district court concluded that he qualifies as a "representative" of the British Parliament, a foreign government entity. *Id.* at 175. "Because Joe Cyr is Andrew Tyrie's legal representative," the district court continued, "Cyr's request is similarly barred." *Id.* at 177. And as to the APPG, an organization composed "exclusively of public officials," the district court concluded that it is itself a "'subdivision' of a foreign 'government entity' within the language of the [Foreign Government Entity Exception]." *Id.* at 175–76.

The three FOIA requesters now appeal, reiterating arguments they made in the district court. For their part, the intelligence agencies do not defend the district court's conclusion that the APPG constitutes a subdivision of a foreign

government entity. Instead, they argue that all three FOIA requesters qualify as "representatives" of the British government: Tyrie as a member of Parliament, the APPG as an organization made up entirely of members of Parliament, and Cyr as their legal representative. "We review de novo the district court's grant of a motion to dismiss, as well as its resolution of this pure question of statutory interpretation," *Gonzalez-Vera* v. *Townley*, 595 F.3d 379, 381–82 (D.C. Cir. 2010) (internal quotation marks and citation omitted), and give the intelligence agencies' interpretation of FOIA no deference, *see Al-Fayed v. C.I.A.*, 254 F.3d 300, 307 (D.C. Cir. 2001) ("[I]t is precisely because FOIA's terms apply government-wide that we generally decline to accord deference to agency interpretations of the statute, as we would otherwise do under *Chevron* . . . .").

## II.

At the outset, we think it important to place this case in its proper context. For one thing, contrary to the intelligence agencies' suggestion that interpreting "representative" to mean "agent" would expose government secrets to terrorists, national security is not at issue here. Because one of FOIA's traditional exemptions prevents disclosure of classified records, no classified information will see the light of day regardless of how we decide this case. *See* 5 U.S.C. § 552(b)(1) (precluding disclosure of records "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy"). Moreover, whatever the Foreign Government Entity Exception's "representative" provision means, it is unlikely to pose a serious barrier to the release of unclassified records. Since the exception does not apply to FOIA requests filed by any person, foreign or domestic, other than foreign government entities and their representatives, a requester concerned about the exception can steer clear of it simply by waiting for a likeminded requester to seek the same

information. *Cf.* Oral Arg. Rec. 21:10–:40 (noting that several FOIA requesters who fall well outside the Foreign Government Entity Exception have recently filed requests identical to those at issue here). But because Tyrie, the APPG, and Cyr filed these requests themselves, prompting the intelligence agencies to invoke the Foreign Government Entity Exception, we must determine the scope of the exception's "representative" provision—a question of first impression in this or any circuit.

Although the intelligence agencies insist that these FOIA requesters are "representatives" of a foreign government entity, they never clearly explain how they would have us define "representative." In their brief, they urge us to hold that the Foreign Government Entity Exception applies, "at a minimum, to FOIA requests filed by members of the legislative bodies of foreign governments, groups comprised solely of such individuals, and their legal representatives." Appellees' Br. 10. When pressed at oral argument to provide a definition of the term that would apply more broadly, counsel suggested that "representatives" of foreign government entities include all those who have the capacity to act on behalf of such entities. Oral Arg. Rec. 17:00–18:20, 22:25–23:00. But counsel seemed less willing to defend this interpretation once he realized that it might capture personal secretaries, cafeteria employees, and janitors. *Id.* at 25:15–28:50.

By contrast, the FOIA requesters have consistently posited a clear interpretation of the term "representative." As they see it, "representative" means "agent." Thus, "representatives" of foreign government entities include only those who have been empowered to file certain types of FOIA requests on behalf of such entities and only when they file those types of requests. Authority to act as an agent of a foreign government entity for purposes of FOIA is likely inherent in certain positions, such as

head of state and ambassador, obviating any need to inquire into whether officials holding such positions have specific authority to file particular sorts of FOIA requests. Other officials, such as cabinet ministers, likely also have inherent authority to submit FOIA requests so long as the requests relate to matters within the jurisdiction of their offices. The intelligence agencies concede that under the FOIA requesters' theory, Tyrie, the APPG, and Cyr fall outside the Foreign Government Entity Exception.

The FOIA requesters have the better of this argument. To begin with, consider the meaning of the word "representative." The *Oxford English Dictionary* defines "representative," in part, as "[o]ne who represents another, as agent, delegate, substitute, successor, or heir." XIII OXFORD ENGLISH DICTIONARY 660 (J.A. Simpson & E.S.C. Weiner eds., 2d ed. 1989); *see also* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1926 (Philip Babcock Gove ed., 3d. ed. 1993) (defining "representative," in part, as "constituting the agent for another esp. through delegated authority"). Indeed, this Court recently observed as much with respect to the same word in a different statute: "'representative' is traditionally and commonly defined as an agent with authority to bind others." *Loving v. I.R.S.*, 742 F.3d 1013, 1016 (D.C. Cir. 2014) (citing various dictionaries, including specialized legal dictionaries, and various statutory definitional provisions). Given that "agent" is a traditional and common definition of "representative," and given that reading "representative" of a foreign government entity to mean "agent" of a foreign government entity makes perfect sense, we suspect that Congress would have used a different word—perhaps "official," "employee," or "affiliate"—had it wanted to avoid incorporating agency principles into the Foreign Government Entity Exception.

The structure of the Foreign Government Entity Exception reinforces this conclusion. Recall that the exception first precludes intelligence agencies from considering FOIA requests filed by foreign government entities and immediately thereafter precludes such agencies from considering requests filed by "representatives" of such entities. The U.S. Code is chock-full of provisions that first mention some entity and then refer to that entity's "representatives" in order to ensure that the provision applies not only to the entity itself but also to that entity acting through others. *See, e.g.*, 7 U.S.C. § 7464(a) (establishing a National Kiwifruit Board consisting in part of "10 members who are producers, exporters, or importers (or their representatives)"); 30 U.S.C. § 1271(a)(2) (authorizing "the Secretary [of the Interior] or his authorized representative" to "order a cessation of surface coal mining and reclamation operations" upon finding certain environmental violations). Granted, many of these provisions refer to an entity and its representatives in a single phrase whereas FOIA section 552(a)(3)(E) splits entities and their representatives into separate subsections, but the lengthy definition of foreign government entity in subsection 552(a)(3)(E)(i) likely required Congress to employ separate subsections here. *See* 5 U.S.C. § 552(a)(3)(E)(i) (referring to "any government entity, other than a State, territory, commonwealth, or district of the United States, or any subdivision thereof"). We therefore think it reasonable to infer that Congress included the "representative" provision in order to prevent foreign government entities from evading the Foreign Government Entity Exception by filing FOIA requests through agents, not to create a separate and independent class of disfavored FOIA requesters.

The intelligence agencies argue that "representative" means something other than "agent." They emphasize two points.

First, while acknowledging that "agent" is one possible definition of "representative," they suggest that Congress drafted this statute in a way that requires us to adopt a different definition. Echoing the district court, they primarily argue that had Congress wanted to establish an agency requirement, it would have used the more precise word "agent" instead of "representative." But as the intelligence agencies' counsel conceded at oral argument, the words "representative" and "agent" are synonyms. Oral Arg. Rec. 15:40–16:00. To take just one example, *The Random House Thesaurus* lists "representative" as the first synonym for "agent," and vice versa. THE RANDOM HOUSE THESAURUS COLLEGE EDITION 30, 599 (Jess Stein & Stuart Berg Flexner eds., 1984); *see also* ROGET'S INTERNATIONAL THESAURUS 412 (Robert L. Chapman ed., 5th ed. 1992) (listing "representative" as the third synonym for "agent"); F. STURGES ALLEN, ALLEN'S SYNONYMS AND ANTONYMS 323 (T.H. Vail Motter ed., 1938) (listing "agent" as the first synonym for "representative"). Where, as here, two words share at least one common meaning, we read nothing into Congress's use of one rather than the other. *See Tyler v. Cain*, 533 U.S. 656, 664 (2001) ("Congress, needless to say, is permitted to use synonyms in a statute.").

In further support of their argument that Congress drafted this statute in a way that precludes interpreting "representative" to mean "agent," the intelligence agencies argue that since "representative" can also be defined as "member of a legislative body," we should interpret "representative" to include, at least, all members of foreign legislative bodies. We disagree. Even though some dictionaries list "member of a legislative body" as one definition of "representative," and even though members of Congress are known as "representatives," members of legislative bodies are "representatives" because they act on behalf of their constituents, not because they are representatives of foreign

government entities. *See, e.g.*, XIII OXFORD ENGLISH DICTIONARY at 660 (defining "representative," in part, as "one who . . . represents a number of persons in some special capacity; *spec.* one who represents a section of the community as member of a legislative body").

Second, the intelligence agencies point to the purpose of the Foreign Government Entity Exception. According to the House Report, the only relevant legislative history, Congress added the Foreign Government Entity Exception to FOIA in order to lessen compliance burdens:

> [F]oreign persons and governments (including those that may support or participate in terrorist activities) have generated requests that require a significant commitment of Intelligence Community resources to process. . . . Because elements of the Intelligence Community routinely handle classified national security information, the resources required to perform the painstaking, line-by-line reviews necessary to ensure the proper protection of such classified information are substantial. This section will prevent the diversion of the Intelligence Community's limited declassification resources for this purpose.

H.R. REP. No. 107-592, at 27 (2002). The intelligence agencies argue that interpreting "representative" to mean "agent" would, instead of decreasing compliance burdens, actually impose new burdens on intelligence agencies because they would have to engage in a time-intensive inquiry into whether each individual FOIA requester qualifies as an agent of a foreign government entity.

We hesitate to put much stock in the House Report. For one thing, it refers to "foreign persons" even though the statute applies only to certain foreign persons, i.e., foreign government

entities and their representatives. Moreover, even if the report accurately documents what the House committee—a subset of one house of Congress—thought about the Foreign Government Entity Exception, we have explained that our interpretation finds support in the text and structure of the statute. *See, e.g.*, *Citizens Coal Council v. Norton*, 330 F.3d 478, 481 (D.C. Cir. 2003) (noting that "text [and] structure" are "traditional tools of statutory interpretation" that must be considered alongside "legislative history" and "purpose" (internal quotation marks omitted)).

In any event, we have no reason to believe that the intelligence agencies' preferred approach would prove any less burdensome than ours. Reading the term "representative" to mean something along the lines of "official," "employee," or "affiliate," as the intelligence agencies seem to suggest, would leave the precise contours of the "representative" class quite vague. Is a parliamentary janitor or cafeteria worker a "representative" of a foreign government entity? What about a low-level civil service staffer at the U.K. Home Office? Or what about Tyrie's personal secretary? The intelligence agencies never explain why resolving these uncertainties would prove any easier than identifying whether FOIA requesters are agents of foreign government entities. Indeed, determining whether a FOIA requester is a representative of a foreign government entity is not unlike other inquiries agencies already engage in. For instance, this Court has interpreted FOIA section 552(d), which provides that FOIA exemptions do not apply to requests from Congress, as requiring agencies to distinguish between requests made by members of Congress in their official capacities and those made in their individual capacities. *See Murphy v. Department of the Army*, 613 F.2d 1151, 1157 (D.C. Cir. 1979); *see also* Office of Information Policy, U.S. Department of Justice, *Congressional Access Under FOIA*, 5

11

FOIA  UPDATE  1  (1984),  *available  at*
http://www.justice.gov/oip/foia_updates/Vol_V_1/page3.htm
(rejecting *Murphy* and recommending adoption of an agency
approach under which "[e]ven where a FOIA request is made by
a Member clearly acting in a completely official capacity, such a
request does not properly trigger the special access rule . . .
unless it is made by a committee or subcommittee chairman, or
otherwise under the authority of a committee or subcommittee").

We thus conclude that FOIA requesters who have authority
to file requests on behalf of foreign government entities are
"representatives" of such entities when they file requests of the
sort they have authority to file. Since the intelligence agencies
concede that under this theory these three FOIA requesters fall
outside the Foreign Government Entity Exception, the exception
poses no barrier to the FOIA requests at issue.

### III.

For the foregoing reasons, we reverse and remand.

*So ordered.*