# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

Argued November 9, 2004      Decided January 11, 2005

No. 04-1014

James A. Kay, Jr.,

Appellant

v.

Federal Communications Commission,

Appellee

_____

Appeal of an Order of the Federal Communications
Commission

_____

*Robert J. Keller* argued the cause for the appellant.

*Gregory M. Christopher*, Counsel, Federal Communications Commission, argued the cause for the appellee. *John A. Rogovin*, General Counsel, and *Daniel M. Armstrong*, Associate General Counsel, Federal Communications Commission, were on brief for the appellee. *Roberta L. Cook*, Counsel, Federal Communications Commission, entered an appearance.

Before: EDWARDS, HENDERSON and GARLAND, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

2

KAREN LeCRAFT HENDERSON, *Circuit Judge*: James Kay (Kay) appeals an order of the Federal Communications Commission (Commission) denying his application for review of the decision of the Commission's Wireless Telecommunications Bureau (Bureau) finding untimely the "finder's preference" request Kay filed involving Specialized Mobile Radio Systems (SMR) station WNPA325. He brings a two-fold challenge to the Commission's order under the Administrative Procedure Act (APA), alleging that it is not supported by substantial record evidence, *see* 5 U.S.C. § 706(2)(E), and is based on a misinterpretation of the applicable Commission rule, *see id.* § 706(2)(A). We reject both challenges and, accordingly, affirm.

**I.**

In October 1993 Kay filed a finder's preference request regarding SMR station WNPA325, operating on frequency 854.7125 in Banning, California, pursuant to section 90.173(k) of the Commission rules. That section then[1] provided:

> Notwithstanding any other provisions of this Part, any eligible person may seek a dispositive preference for an exclusive channel assignment in the 220-222 MHz, 470-512 MHz, and 800/900 MHz bands by submitting information that ultimately leads to the recovery of frequencies in these bands. Recovery of such frequencies will come about as a result of information provided regarding the failure of existing licensees to comply with various provisions of [sections] 90.155, 90.157, 90.629, 90.631(e) or (f), or 90.633(c) or (d).

---

[1] *See* 47 C.F.R. § 90.173(k) ("This paragraph is only applicable to entities with Finder's Preference requests pending before the Commission as of July 29, 1998.").

47 C.F.R. § 90.173(k) (1992 version). Relying on two parts of another Commission rule—section 90.157[2]—Kay asserted that station WNPA325 had cancelled automatically because its licensee, William F. Kelsey d/b/a AVCOM Company (AVCOM), had failed to operate the station for one year after the station's only end-user licensee,[3] Cardin Asphalt (Cardin), left AVCOM's SMR system.

Approximately one year before Kay filed his finder's preference request with the Commission, he had filed with it an application for modification seeking to add AVCOM's co-channel frequency[4] for station WNPA325 (854.7125) to his

---

[2] The version of section 90.157 in force at the time provided that "any station which has not operated for [one] year or more is considered to have been permanently discontinued," 47 C.F.R. § 90.157(b) (1992 version), and that a station's license "shall cancel automatically upon permanent discontinuance of operations." *Id.* § 90.157(a).

[3] An SMR system—consisting of base stations, transmitters, antennas and mobile radio equipment—provides two-way mobile communications services to customers called "end users." *See Amendment of Part 90 of the Commission's Rules to Eliminate Separate Licensing of End Users of Specialized Mobile Radio Systems*, Report & Order, 7 FCC Rcd 5558, ¶ 2 (1992) (hereinafter *End User Order*); *James A. Kay, Jr., Licensee of One Hundred Fifty Two Part 90 Licenses in the Los Angeles, CA Area*, Memorandum Opinion & Order, 12 FCC Rcd 2898, 2899, ¶ 4 (Gen. Counsel 1997). The Commission initially licensed an SMR system's base station frequencies and an end user's operations separately, but in 1992 ended this two-tier license regime by allowing end users to operate under a "blanket license issued to an SMR base station licensee." *End User Order*, 7 FCC Rcd at 5559, ¶ 8, 5562, ¶ 26.

[4] As the co-channel licensee of frequency 854.7125, AVCOM shared the channel with Kay's trunked station, WNJL306. *See* J.A. 139, 208.

own trunked[5] SMR station, WNJL306. Kay's application, however, was met by petitions to deny filed by AVCOM and Cardin. They alleged that Cardin's end-user license for station WNPA325 had been fraudulently assigned by a Cardin employee to L.A. Scrap Iron & Metal Corporation (L.A. Scrap), one of Kay's customers. They further alleged that this fraudulent assignment led the Industrial Telecommunications Association to mistakenly certify that station WNPA325 was non-operational, which certification, in turn, provided Kay the basis to seek modification without first obtaining AVCOM's written consent. *See* 47 C.F.R. § 90.615(b)(2)(ii) (1992 version). AVCOM and Cardin therefore requested the Commission to invalidate the assignment and return the license to Cardin.

By letter dated October 5, 1995, the Bureau's Office of Operations (Office) dismissed Kay's finder's preference request. It explained that no finder's preference was available for station WNPA325's license because "[t]he target license was the subject of a Commission compliance action at the time of the filing of the finder's preference request." J.A. 60. Later that month, the Office also voided the assignment of Cardin's end-user license and reinstated and renewed AVCOM's license for station WNPA325.

Kay petitioned for reconsideration of the Office's decision the following month, November 1995. The Bureau's Policy

---

[5] SMR systems are either "trunked" or "conventional." *See End User Order*, 7 FCC Rcd at 5558, ¶ 2. "Trunked systems, which are more common in the SMR service and generally more spectrally efficient than conventional systems, automatically locate available channels for communication. Conventional systems require users to search manually for an open channel or to wait until a particular channel becomes available for use." *Id.* at 5558 n.2. *See generally Cal. Metro Mobile Communications v. FCC*, 365 F.3d 38, 39 n.1 (D.C. Cir. 2004) ("trunking" increases efficiency in spectrum use).

and Rules Branch (Branch) did not act on the petition, however, until seven years later when it denied the petition. The Branch agreed with the Office that Kay's request was untimely under former section 90.173(k)(2) of the Commission rules, which provided that "[t]he [finder's] preference shall not apply to any case scheduled for regular review during the Private Radio Bureau's normal compliance activities or to any case under Commission review or investigation." 47 C.F.R. § 90.173(k)(2) (1992 version). It concluded that "Kay's request targeted a license that was already under Commission review in connection with the alleged fraudulent assignment of an end user license from Cardin to L.A. Scrap." J.A. 87. The Branch countered Kay's claim that section 90.173(k)(2) was inapplicable because the Commission's investigation into the legitimacy of the assignment of Cardin's license to L.A. Scrap did not constitute a compliance action by explaining that the section "exempted any case under Commission review or investigation, because the finder's preference program was designed to uncover facts of which the Commission was not aware or could not readily ascertain." J.A. 87. Kay's request, the Branch observed, simply "harvested information already known to the Commission." J.A. 88.

In September 2002 Kay filed an application for review of the Branch's decision with the Commission. The Commission subsequently denied review in an order released in December the following year. *See Request of James A. Kay, Jr., Seeking a Finder's Preference for Call Sign WNPA325*, Order, 18 FCC Rcd 26,468 (Dec. 11, 2003) [hereinafter *Kay Order*], *reprinted in* J.A. 97-102. The Commission concluded, as had both the Office and the Branch, that Kay's request was untimely under section 90.173(k)(2). *See id.* at 46,471, ¶ 7, 46,473, ¶ 11. According to the Commission, former section 90.173(k)(2) applied to Kay's finder's preference request because that section

"provided, without limitation, that a finder's preference is not available if the finder's request is related to any case . . . under Commission review or investigation." *Id.* at 46,471, ¶ 7 (internal quotation marks omitted). Kay's request related to such a case, the Commission further explained, as it was already investigating (in connection with Kay's application to modify his trunked station) the allegedly fraudulent assignment of the "sole end user license to the SMR system Kay targeted." *Id.* at 46,471-72, ¶ 7.

The Commission offered a two-fold response to Kay's contention that section 90.173(k)(2) was inapplicable because the section covered only those investigations "directly" related to the violation(s) alleged in a finder's preference request and the Cardin assignment proceeding was merely "peripheral" to station WNPA325's non-operational status. *Id.* at 46,472, ¶ 8. The Commission first explained that "there is no authority for such a narrow reading of the rule," and then, on the facts, concluded that "the alleged unauthorized assignment of Cardin's license provided the direct basis for Kay's Finder's Preference Request alleging that station WNPA325 permanently discontinued operations in violation of the Commission's rules." *Id.*

The Commission also rejected Kay's argument that, because he was the one who supplied the Commission with the information triggering the investigation of station WNPA325 in the first place, he should receive the finder's preference. *See id.* at 46,472, ¶ 9. It explained that '[t]he fact that the Commission review or investigation arose from Kay's separate attempt to obtain the frequency associated with call sign WNPA325 through the filing of a modification application does not invalidate rule 90.173(k)(2), nor its application to a filing involving an allegation of permanent discontinuance of operations." *Id.* Finally, the Commission observed that it never intended to offer the finder's preference

"on an unrestricted basis." *Id*. (internal quotation marks omitted).

Kay now appeals the Commission's order.

## II.

Kay asserts that we must set aside the Commission's order because it is the product of two fatal errors—one factual, the other legal. He first maintains that the Commission's finding of untimeliness is not supported by substantial evidence in the record. *See* 5 U.S.C. § 706(2)(E); *Communications Vending Corp. of Ariz. v. FCC*, 365 F.3d 1064, 1069 (D.C. Cir. 2004). Additionally, he maintains that the Commission's failure to correctly apply section 90.173(k)(2) of its rules renders its decision "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see City of Brookings Mun. Tel. Co. v. FCC*, 822 F.2d 1153, 1164 (D.C. Cir. 1987). Kay's two assertions, in effect, raise but a single challenge—*i.e.*, in finding his request untimely, the Commission interpreted section 90.173(k)(2) unreasonably—and one which we reject.

While we accord a substantial measure of deference to the Commission's interpretation of the Communications Act, *see Chevron U.S.A. Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842-43 (1984); *Cal. Metro Mobile Communications, Inc. v. FCC*, 365 F.3d 38, 43 (D.C. Cir. 2004), we give it even greater interpretative latitude with respect to the rules it promulgates. *See Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504, 512 (1994); *Martin v. Occupational Safety & Health Review Comm'n,* 499 U.S. 144, 150-51 (1991). Indeed, the Commission's interpretation of its own regulation receives "controlling weight" unless it is "plainly erroneous or inconsistent with the regulation." *Communications Vending Corp. of Ariz.*, 365 F.3d at 1069 (internal quotation marks omitted); *accord S.A. Storer & Sons Co. v. Sec'y of*

*Labor,* 360 F.3d 1363, 1368 (D.C. Cir. 2004); *cf. Martin,* 499 U.S. at 150-51 ("court should give effect to the agency's interpretation . . . so long as the interpretation 'sensibly conforms to the purpose and wording of the regulations'" (quoting *N. Ind. Pub. Serv. Co. v. Porter County Ch. of Izaak Walton League of Am., Inc.,* 423 U.S. 12, 15 (1975))).

We think the Commission's interpretation of former section 90.173(k)(2) fits quite comfortably with its plain language as well as with the policy it advances. In essence, Kay argues that, in basing its finding of untimeliness on the Cardin/L.A. Scrap assignment investigation, the Commission erroneously interpreted section 90.173(k)(2) because, in his view, the "case under Commission review or investigation" to which the rule refers must involve either a "failure to timely construct and commence operation" or "permanent discontinuance of operations." Appellant's Br. at 22. But Kay's crabbed interpretation ignores the plain language of section 90.173(k)(2) that a finder's preference is unavailable in "*any* case under Commission review or investigation." 47 C.F.R. § 90.173(k)(2) (1992 version) (emphasis added). Thus, because section 90.173(k)(2) uses "any"—meaning "[o]ne, some, every, or all without specification"[6]—to modify "case," the Commission's interpretation of "case" to include not only the two types that Kay identified but instead, "without limitation," *Kay Order*, 18 FCC Rcd at 26,471, ¶ 7, *any* case under review perfectly accords with the text. *See* 47 C.F.R. § 90.173(k)(2) (1992 version).

The Commission's interpretation also comports with the rationale underlying the finder's preference. The Commission adopted the preference to carry out its statutory mandate to "encourage the larger and more effective use of radio in the public interest," 47 U.S.C. § 303(g), by

---

[6] THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 81 (4th ed. 2000).

responding to two related concerns: First, the increasing demand for the scarce frequencies in the private land mobile radio services; and second, the Commission's limited resources available for compliance activities aimed at recapturing and reassigning unused or underutilized frequencies. *See Amendment of Parts 1 & 90 of the Commission's Rules Concerning the Construction, Licensing & Operation of Private Land Mobile Radio Stations*, Report & Order, 6 FCC Rcd 7297, 7302, ¶ 30 (1991) [hereinafter *PLMRS Report & Order*]; *Amendment of Part 90 of the Commission's Rules Concerning the Construction, Licensing & Operation of Private Land Mobile Radio Stations*, Notice of Proposed Rulemaking, 5 FCC Rcd 6401, ¶ 2, 6403, ¶ 18 (1990) [hereinafter *PLMRS Proposed Rulemaking*]. Thus, by providing the incentive of "dispositive preference" to become the licensee of a recovered frequency, the Commission sought to promote the efficient allocation of the spectrum by supplementing its own enforcement activities with the self-interested policing efforts of those in the private land mobile radio industry. *See PLMRS Report & Order*, 6 FCC Rcd at 7302-03, ¶¶ 30, 33, 7309, ¶ 77; *PLMRS Proposed Rulemaking*, 5 FCC Rcd at 6403-04, ¶¶ 18, 21. It did not adopt the finder's preference, as Kay seems to suggest, to serve the public interest by assigning unused spectrum to those who managed to be first in line. *See PLMRS Report & Order*, 6 FCC Rcd at 7303, ¶ 33, 7309, ¶ 77; *PLMRS Proposed Rulemaking*, 5 FCC Rcd at 6404-05, ¶¶ 22, 28. A first come, first served spectrum giveaway would not advance section 90.173(k)'s objective of encouraging industry members to help the Commission identify unused private radio spectrum so that the unused frequency could be reallocated to a licensee that would use it effectively as this sort of "preference" would reward an aspiring licensee simply for his haste, and not, in addition, for "constructively and effectively," *PLMRS Proposed Rulemaking*, 5 FCC Rcd

at 6405, ¶ 28, providing the Commission with information it did not possess. *See PLMRS Report & Order*, 6 FCC Rcd at 7303, ¶ 33, 7309, ¶ 77 ("Through [the finder's preference] program, we will enhance spectrum efficiency by identifying more unused channels and reassigning them to persons who will use them effectively."); *PLMRS Proposed Rulemaking*, 5 FCC Rcd at 6404-05, ¶¶ 22, 28 ("[W]e want to encourage the industry to assist us in monitoring the use of private radio spectrum and believe it is in the public interest to reward those who constructively and effectively help us.").

Kay also purports to assail the factual basis for the Commission's order. He alleges that "nothing under consideration" in the license modification proceeding could have rendered his finder's preference request untimely and that "there is absolutely no evidence in the record below to support the contention that, prior to October 11, 1993, when Kay submitted his finder's request, the Commission was already investigating station WNPA325." Appellant's Br. at 23. Nor, to his mind, could there have been as the predicate for his request—station WNPA325's permanent discontinuance of operations—did not occur until two business days before he filed his request. This argument amounts to little more than a reformulation of the one we have already rejected. It is in effect a collateral attack on the Commission's legal conclusion that its scrutiny of the assignment of Cardin's end-user license to L.A. Scrap put station WNPA325 "under Commission review or investigation" within the meaning of section 90.173(k)(2). The target station's status was in fact on the Commission's radar screen for more than eight months before Kay filed his request as a result of AVCOM's and Cardin's petitions to deny Kay's application to modify his trunked station. Kay overlooks the fact that the allegedly fraudulent license assignment of Cardin's end-user license to L.A. Scrap of which AVCOM and Cardin complained in their petitions

created the very discontinuance of station WNPA325's operations on which Kay based his finder's preference request. The Commission's investigation into the transfer of the sole end-user license for station WNPA325 (thereby making it "non-operational") plainly supports its finding that Kay's request was untimely because the request "targeted a station with a licensing status that was the subject of an existing Commission review or investigation." *Kay Order*, 18 FCC Rcd at 26,471, ¶ 7.

Accordingly, because the facts fit the Commission's interpretation of section 90.173(k)(2) and that interpretation fits the rule's plain language, we affirm the Commission's order denying Kay's application for review of the Bureau's decision finding his finder's preference request untimely.

*So ordered.*