# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued March 7, 2006    Decided June 27, 2006

No. 05-1186

AT&T INC.,
PETITIONER

v.

FEDERAL COMMUNICATIONS COMMISSION AND
UNITED STATES OF AMERICA,
RESPONDENTS

TIME WARNER INC. AND
TIME WARNER CABLE,
INTERVENORS

———

On Petition for Review of an Order of the
Federal Communications Commission

———

*Jonathan E. Nuechterlein* argued the cause for petitioner. With him on the briefs were *William T. Lake*, *Lynn R. Charytan*, *Brian W. Murray*, *Stephen M. Obenski*, *James D. Ellis*, and *Gary L. Phillips*.

*Nandan M. Joshi*, Counsel, Federal Communications Commission, argued the cause for respondent. On the brief were *Thomas O. Barnett*, Acting Assistant Attorney General, U.S. Department of Justice, *Robert B. Nicholson* and *James J.*

*Fredricks*, Attorneys, *Samuel L. Feder*, General Counsel, Federal Communications Commission, *Richard K. Welch*, Associate General Counsel, *John E. Ingle*, Deputy Associate General Counsel, and *Laurence N. Bourne*, Counsel.

Before: RANDOLPH and TATEL, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* TATEL.

Concurring opinion filed by *Circuit Judge* RANDOLPH.

TATEL, *Circuit Judge*: Invoking section 10 of the Communications Act of 1934, SBC Communications Inc. filed a petition with the Federal Communications Commission requesting that the Commission "forbear from applying Title II common carrier regulation to IP platform services." Fifteen months later, the Commission denied the request for two independent reasons: (1) the petition was "procedurally defective" because the Commission had yet to determine whether common carrier regulations even applied to IP platform services, and (2) SBC failed to "identify with sufficient precision" the regulations and services it intended the petition to cover. Arguing that the first rationale conflicts with section 10 and the second is arbitrary and capricious, SBC—recently renamed AT&T Inc.—petitions for review. Because we agree that the Commission lacks section 10 authority to reject a petition as procedurally improper just because it requests forbearance from uncertain regulatory obligations, we reject the Commission's first rationale for denying SBC's petition. And because the Commission has failed to explain how its second rationale is consistent with the specificity standard it has applied in other contexts, we remand the case for further explanation and consideration consistent with this opinion.

**I.**

Congress enacted the Telecommunications Act of 1996 to "encourage the rapid deployment of new telecommunications technologies" by "promot[ing] competition and reduc[ing] regulation" among telecommunications providers. Telecommunications Act of 1996, Pub. L. No. 104-104, pmbl., 110 Stat. 56, 56. Critical to Congress's deregulation strategy, the Act added section 10 to the Communications Act of 1934. That section requires the Federal Communications Commission to "forbear" from enforcing communications statutes and regulations in certain specified circumstances. In particular, section 10(a) provides that

> the Commission shall forbear from applying any regulation or any provision of [federal telecommunications law] to a telecommunications carrier or telecommunications service, or class of telecommunications carriers or telecommunications services, in any or some of its or their geographic markets, if the Commission determines that—
>
> (1) enforcement of such regulation or provision is not necessary to ensure that the charges, practices, classifications, or regulations by, for, or in connection with that telecommunications carrier or telecommunications service are just and reasonable and are not unjustly or unreasonably discriminatory;
>
> (2) enforcement of such regulation or provision is not necessary for the protection of consumers; and
>
> (3) forbearance from applying such provision or regulation is consistent with the public interest.

47 U.S.C. § 160(a). Section 10(b) requires that in determining whether forbearance is "consistent with the public interest," the Commission "shall consider whether forbearance from enforcing the provision or regulation will promote competitive market

conditions, including the extent to which such forbearance will enhance competition among [telecommunications] providers." *Id.* § 160(b). Section 10(c) allows telecommunications carriers to petition the Commission for forbearance with respect to particular services or facilities. *Id.* § 160(c). Should the Commission fail to respond within one year, the petition "shall be deemed granted," although the Commission may extend the one-year period by an additional 90 days if it "finds that an extension is necessary to meet the requirements of subsection (a)." *Id.*

On February 5, 2004, SBC Communications Inc. filed a section 10 petition requesting forbearance from "Title II common carrier regulation" for "IP platform services," Petition of SBC Commc'ns Inc. for Forbearance, WC Docket No. 04-29, at 1 (filed Feb. 5, 2004) ("Forbearance Petition"), which it defined as "those services that enable any customer to send or receive communications in IP format over an IP platform, and the IP platforms on which those services are provided," *id.* at i. Acknowledging some general uncertainty as to whether Title II actually covers these services, SBC urged the Commission to "eliminate any doubt concerning the unregulated status of IP platform services by expressly forbearing from applying Title II regulation . . . to the extent that such regulation might otherwise be found to apply." *Id.* at 2. In a second simultaneously filed petition, SBC requested a declaratory ruling "confirm[ing] that IP platform services . . . are not subject to Title II regulation." Petition of SBC Commc'ns Inc. for a Declaratory Ruling i (filed Feb. 5, 2004) ("Declaratory Ruling Petition").

One month after SBC filed its two petitions, the Commission issued an "IP-Enabled Services" Notice of Proposed Rulemaking (NPRM) raising many of the same issues presented in SBC's petitions. *See* IP-Enabled Services, 19 F.C.C.R. 4863 (proposed Mar. 10, 2004). The Commission consolidated SBC's

declaratory ruling request with the rulemaking proceedings and, given the "substantial overlap between the issues presented in the SBC Forbearance Petition and the *IP-Enabled Services NPRM*," extended the period for comment on the forbearance petition to coincide with the NPRM's comment cycle. *Wireline Competition Bureau Extends Comment Deadlines for SBC's* "IP Platform Services" *Forbearance Petition*, 19 F.C.C.R. 5607, 5607 (Mar. 30, 2004) (public notice). During the following year, SBC and other interested parties filed comments and *ex parte* submissions relating to both the rulemaking proceeding and SBC's two petitions.

After extending the one-year period by an additional ninety days, the Commission denied SBC's forbearance petition. The Commission's order explains:

> We find that the petition is procedurally defective because it asks us to forbear from the application of statutory provisions and regulations that "may or may not" apply to the telecommunications carrier or telecommunications service at issue. In addition, the evidence and arguments set out in SBC's petition and subsequent pleadings are insufficiently specific to permit a finding that forbearance is appropriate.

*In re: Petition of SBC Commc'ns Inc. for Forbearance from the Application of Title II Common Carrier Regulation to IP Platform Servs.*, 20 F.C.C.R. 9361, 9361 (May 5, 2005) ("Forbearance Order").

SBC filed a petition for review with this court, *see* 47 U.S.C. § 402(a) (allowing parties aggrieved by a Commission order to appeal to this court) and, during briefing, merged with AT&T Corp. to form a new company AT&T Inc. AT&T argues that (1) nothing in section 10 permits the Commission to reject,

as procedurally improper, petitions seeking forbearance from regulatory obligations that "may or may not" apply to the facilities and services in question; and (2) the Commission acted arbitrarily and capriciously in denying SBC's petition on the alternative ground that the petition lacked sufficient specificity to determine whether section 10(a)'s requirements were satisfied.

## II.

We begin with the Commission's first reason for rejecting the petition—that the Commission had yet to determine the extent to which Title II actually covers IP-enabled services. In its order denying SBC's petition, the Commission relied on language from two different parts of section 10 to explain why it may reject as procedurally improper any "conditional" forbearance petition, that is, any petition seeking forbearance from uncertain regulatory obligations.

First, section 10(a) uses the word "forbear," which means, the Commission says, "to desist from" or "cease." Forbearance Order, 20 F.C.C.R. at 9363 ¶ 5. Because "it would be impossible" to "forbear" from applying a regulation "that does not apply," the Commission concluded, section 10 "do[es] not govern petitions seeking such relief." *Id.* In other words, according to the Commission, it lacks authority to consider conditional forbearance requests because "section 10 neither contemplates nor permits grants of forbearance relating to obligations that 'may or may not' apply to the . . . service at issue." *Id.* In its opening brief, AT&T offered a forceful rebuttal to this interpretation of section 10, but we need not consider the issue because the Commission, in addition to failing to defend its position in its brief, affirmatively withdrew it at oral argument. Oral Arg. 13:20-:35.

We thus focus on the second provision the Commission relied on to support its conclusion that conditional forbearance petitions are "procedurally defective," namely, section 10(a)(3)'s public interest requirement. The Commission reasoned:

> [W]e find that the grant of a petition seeking forbearance from a requirement that does not unambiguously apply is contrary to the public interest, and therefore does not satisfy the requirements for granting forbearance under section 10(a)(3) of the Act. It is not in the public interest to forbear from requirements before the Commission has fully considered whether and under what technical conditions the requirements apply in the first place. To do so could preclude fully considered analysis, particularly in light of the statutory deadline for acting on forbearance petitions. The opposite conclusion would effectively impose a deadline for the Commission to rule on the appropriate regulatory treatment of IP-enabled services. In addition, it is not in the public interest for the Commission to devote resources to determine whether to forbear from imposing or enforcing requirements that might not even apply.

Forbearance Order, 20 F.C.C.R. at 9363 ¶ 6.

Critical to the issue before us, the Commission pointed to nothing in *SBC's* forbearance request that flunked section 10(a)(3)'s public interest requirement. Instead, the Commission denied SBC's petition on the ground that *all* conditional forbearance requests are, as a procedural matter, contrary to the public interest and thus require no substantive consideration. *See id.* (declaring that "*a* petition" seeking conditional

forbearance is not in the public interest, with no mention of *the* petition submitted by SBC) (emphasis added). Indeed, the Commission's entire discussion focuses on its generic concern that it has neither time nor resources to respond to conditional forbearance requests. Asked about this at oral argument, Commission counsel confirmed that the SBC order announces a new rule, namely, that the Commission will reject any conditional forbearance petition as procedurally defective rather than ruling on its merits. Oral Arg. 26:15-28:13. The question before us, then, is whether section 10(a)(3)'s public interest requirement permits the Commission to adopt such a rule.

We review the Commission's interpretation of section 10(a)(3) in accordance with *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), asking first whether Congress has "directly spoken" to the issue before us, *id.* at 842. To answer this question, we "employ[] traditional tools of statutory construction," *id.* at 843 n.9, beginning "as always, with the plain language of the statute," *Citizens Coal Council v. Norton*, 330 F.3d 478, 482 (D.C. Cir. 2003). If Congress has not clearly expressed its intent on the matter, we move to *Chevron*'s second step, deferring to the agency's interpretation as long as it "is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843; *see also Kay v. FCC*, 393 F.3d 1339, 1343 (D.C. Cir. 2005) (explaining that "we accord a substantial measure of deference to the Commission's interpretation" of telecommunications statutes). In this case, however, we have no need to consider the reasonableness of the Commission's interpretation, for as we explain below, Congress "has directly spoken to the precise question at issue" and we "must give effect to [its] unambiguously expressed intent." *Chevron*, 467 U.S. at 842-43.

To begin with, the Commission's interpretation conflicts with section 10(b), which expressly directs that in determining

whether forbearance is consistent with the public interest under section 10(a)(3), the Commission "shall consider whether forbearance . . . will promote competitive market conditions, including the extent to which such forbearance will enhance competition among providers of telecommunications services." 47 U.S.C. § 160(b). Yet under the Commission's newly announced rule, the Commission will *never* consider market conditions when addressing conditional forbearance requests because it views such requests as automatically failing section 10(a)(3)'s public interest requirement. Nothing in section 10 gives the Commission authority to so ignore section 10(b).

The Commission's approach violates section 10's plain language in a second respect. In the order before us, the Commission effectively held that any conditional forbearance petition will fail section 10(a)'s substantive "public interest" requirement because section 10(c)'s deadline precludes "fully considered analysis" of such petitions. In other words, the Commission has declared it contrary to the public interest to consider such petitions within the statutory time frame. Section 10(a)(3), however, gives the Commission authority to decide only whether "forbearance . . . is consistent with the public interest," not to decide whether *deciding* whether to forbear is in the public interest. Moreover, the Commission's reasoning, if extended, could gut section 10. For example, under the Commission's view, nothing would stop it from finding that the statutory deadline permits "fully considered analysis" of only narrow petitions, and thus adopting a rule that any petition seeking forbearance from more than one regulation is contrary to the public interest. This cannot be correct. Nothing in section 10(a)(3) allows the Commission to avoid ruling on the merits of a forbearance petition whenever it finds the statutory deadline inconvenient. Quite to the contrary, section 10(a)(3)'s very purpose is to force the Commission to act within the statutory deadline.

For these reasons, the Commission's new rule conflicts with the statute's plain language, and the Commission offers us no reason to believe that "Congress did not mean what it appears to have said." *Engine Mfrs. Ass'n v. EPA*, 88 F.3d 1075, 1089 (D.C. Cir. 1996). Indeed, the rule runs counter to the Telecommunications Act's purpose—"reduc[ing] regulation in order to . . . encourage the rapid deployment of new telecommunication technologies," Telecommunications Act of 1996, pmbl., 110 Stat. at 56. Parties petitioning for conditional forbearance seek elimination of regulatory uncertainty, and even the Commission recognizes that "regulatory uncertainty . . . in itself may discourage investment and innovation" regarding the very technologies Congress intended the Act to promote. *Inquiry Concerning High-Speed Access to the Internet Over Cable and Other Facilities*, 17 F.C.C.R. 4798, 4802 ¶ 5 (proposed 2002); *see also* Amendment of the Commission's Space Station Licensing Rules and Policies, 18 F.C.C.R. 10,760, 10,781 ¶ 45 n.115 (2003) ("The Commission has noted on several occasions that regulatory uncertainty can discourage investment, and so unnecessary regulatory uncertainty should be avoided.").

Our conclusion finds support in *AT&T Corp. v. FCC*, 236 F.3d 729 (D.C. Cir. 2001). There, we considered whether the Commission could deny a forbearance petition on the grounds that an alternative route for seeking regulatory relief was available. Answering no, we explained that Congress enacted section 10 as a "viable . . . means of seeking forbearance" from regulation, and the Commission "has no authority to sweep it away" on the grounds that it would prefer to determine the appropriate regulatory treatment of a telecommunications service through a different mechanism. *Id*. at 738. So too here. Just as the "availability of . . . an alternative route for seeking [forbearance] does not diminish the Commission's responsibility to fully consider petitions under § 10," *id*., a forbearance

request's conditional nature gives the Commission no discretion to escape ruling on its merits.

We emphasize that nothing we say here precludes the Commission from finding that the hypothetical nature of a particular forbearance petition renders it impossible to determine whether it satisfies section 10(a)'s substantive requirements. In other words, when assessing the *merits* of a forbearance petition, the Commission may take into account its conditional nature. We hold only that the Commission may not refuse to consider a petition's merits solely because the petition seeks forbearance from uncertain or hypothetical regulatory obligations.

## III.

This brings us to the Commission's alternative basis for denying SBC's petition—that the petition was "not sufficiently specific to determine whether the requested forbearance satisfies the requirements of section 10." Forbearance Order, 20 F.C.C.R. at 9366 ¶ 14. Specifically, the Commission ruled that SBC had failed to identify both (1) the services and facilities it sought forbearance for, and (2) the statutory and regulatory provisions it sought forbearance from. AT&T argues that SBC's petition was sufficiently specific in both respects and that the Commission's finding to the contrary is arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A) (directing reviewing courts to set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"); *see also Verizon Tel. Cos. v. FCC*, 374 F.3d 1229, 1235 (D.C. Cir. 2005) (applying the "arbitrary and capricious" standard to a Commission order denying a forbearance petition). Our review of this aspect of the Commission's decision is "narrow" and we may "not . . . substitute [our] judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Put another way, the question is not what *we* think about the petition, but whether the

*Commission's* view of the petition is reasonable. *See Eagle-Picher Indus. v. EPA*, 759 F.2d 905, 921 (D.C. Cir. 1985) ("Under the arbitrary and capricious standard we look to see if the agency has . . . articulated a rational explanation for its action.").

As for the Commission's first basis for rejecting the petition—that it insufficiently describes the services and facilities it covers—the petition expressly seeks forbearance for "IP platform services," which it defines by reference to SBC's declaratory ruling petition. *See* Forbearance Petition 1. The declaratory ruling petition devotes over five pages to defining the term, explaining among other things that

> "IP platform services" consist of (a) IP networks and their associated capabilities and functionalities (i.e., an IP platform), and (b) IP services and applications provided over an IP platform that enable an end user to send or receive a communication in IP format. The communication may be voice, data, video, or any other form of communication, so long as it is sent to or received by an end user in IP over an IP platform. This definition is expansive in that it encompasses the IP networks themselves and the uses to which these networks are put. It also encompasses both "services" and "applications," since the distinctions between these concepts are meaningless for regulatory purposes in the IP context. Instead, the key characteristic of an IP platform service is that the service must leave or reach the customer in IP over an IP platform.

Declaratory Ruling Petition 28-29. The Commission points to nothing ambiguous about this expansive definition. Instead, it compares a footnote in the declaratory ruling petition that

"appears to request forbearance for services that can ride over legacy networks," Forbearance Order, 20 F.C.C.R. at 9366 ¶ 14 (emphasis omitted), to a subsequent SBC pleading indicating the company never sought forbearance for the legacy networks themselves, *see id.* Neither in its order nor its brief, however, does the Commission explain precisely what it finds confusing about these statements, and we decline to speculate on its behalf.

In its order, the Commission's primary concern appeared to be that SBC sought forbearance for a wide range of services. *See id.* ¶ 15 ("The scope of SBC's petition is . . . potentially very broad."); Resp't's Br. 28 ("[T]he Commission found that the extraordinary breadth and generality of SBC's petition made it impossible to assess whether the forbearance standards had been met."). But as Commission counsel wisely conceded at oral argument, "breadth alone would [not] be a reason to deny the petition." Oral Arg. 30:30-31:00.

In sum, given SBC's extensive definition of "IP platform services" in its declaratory ruling petition and the Commission's failure to identify any inadequacies in that definition, the Commission's rejection of SBC's petition as "insufficiently specific" with respect to services and facilities was arbitrary and capricious.

More persuasive is the Commission's conclusion that SBC failed to adequately identify the regulations from which it sought forbearance. Although the petition requests forbearance from only "common carrier" and "economic" regulation under Title II, *see* Forbearance Petition 1, 11, the Commission correctly points out that the petition "never clearly identifie[d] which specific provisions of Title II this limitation is meant to exclude," Forbearance Order, 20 F.C.C.R. at 9367 ¶ 16. Indeed, although other telecommunications carriers—including AT&T, the very company SBC merged with during the course of these proceedings—submitted comments criticizing SBC for failing

to specify which Title II regulations it intended its petition to cover, SBC refused to provide any clarification, asserting instead that "it would elevate form over substance if forbearance could be granted only following an individual examination of every single provision of Title II standing alone." Reply Comments of SBC Commc'ns, Inc., WC Docket No. 04-29, at 19 (filed July 14, 2004).

AT&T argues that further specificity was unnecessary because the terms "economic" and "common carrier" clearly refer to specific provisions in Title II. Citing an order and two NPRMs in which the Commission itself used these terms—*In re: Vonage Holdings Corporation Petition for a Declaratory Ruling Concerning an Order of the Minnesota Public Utilities Commission*, 19 F.C.C.R. 22,404 (2004) ("*Vonage* order"), IP-Enabled Services, 19 F.C.C.R. 4863 (proposed 2004), and Inquiry Concerning High-Speed Access to the Internet Over Cable and Other Facilities, 17 F.C.C.R. 4798 (proposed 2002)—AT&T asserts that the Commission "has manifested its understanding that 'economic' or 'common carrier' regulation includes a readily identifiable list of certification, tariffing, interconnection, service quality, and other related requirements that are distinct from social policy and consumer protection rules." Pet'r's Br. 30. AT&T also submitted a Rule 28(j) letter pointing out that the Commission recently allowed a *Verizon* forbearance petition to be "deemed granted" even though, like the SBC petition, it "sought relief from the application of Title II common carrier requirements without enumerating all the requirements that fall into that category." Pet'r's 28(j) Letter, Mar. 21, 2006; *see also* Fed. R. App. P. 28(j) ("If pertinent and significant authorities come to a party's attention after the party's brief has been filed . . . a party may promptly advise the circuit clerk by letter . . . setting forth the citations.").

The Commission has never attempted to reconcile either the *Vonage* order or the two NPRMs with the case at hand, and it

remains unclear to us whether, in finding the SBC petition insufficiently specific to warrant forbearance, the Commission acted consistently with the specificity standard applied in these other contexts.  Perhaps the *Vonage* order differs from this case because there the Commission used "economic" and "common carrier" to describe a set of state, rather than federal*,* telecommunications regulations.   Perhaps the other two examples differ because NPRMs require less specificity than forbearance petitions.  For us to so conclude, however, "would impermissibly intrude on the agency's prerogative to make policy judgments for itself." *Nat. Res. Def. Council, Inc. v. Herrington*, 768 F.2d 1355, 1412 (D.C. Cir. 1985); *see also Cassell v. FCC*, 154 F.3d 478, 483 (D.C. Cir. 1998) ("An agency's interpretation of its own precedent is entitled to deference.").  As for the disposition of the *Verizon* petition, although agencies normally "need not explain alleged inconsistencies in the resolution of subsequent cases," *CHM Broad. Ltd. P'ship v. FCC*, 24 F.3d 1453, 1459 (D.C. Cir. 1994); *but cf. Williston Basin Interstate Pipeline Co. v. FERC*, 165 F.3d 54, 61-62 (D.C. Cir. 1999); *Panhandle E. Pipe Line Co. v. FERC*, 890 F.2d 435, 438-39 (D.C. Cir. 1989), we make an exception where, as here, the later case is part of a pattern of arguably inconsistent decision-making that began before the challenged action, *see Idaho Power Co. v. FERC*, 312 F.3d 454, 464 (D.C. Cir. 2002) (vacating because, among other things, the challenged orders were inconsistent with both prior and subsequent agency actions).  Accordingly, we remand the case to the Commission with directions to either (1) explain how the SBC petition is distinguishable from the four examples cited by AT&T, or (2) reconsider the sufficiency of the SBC petition in light of the specificity standard applied in those cases.  *See Fox Television Stations, Inc. v. FCC*, 280 F.3d 1027, 1048 (D.C. Cir. 2002) (finding remand, rather than vacatur, appropriate where

"we cannot say with confidence that the [agency action] is likely irredeemable").

*So ordered.*

RANDOLPH, *Circuit Judge*, concurring: I concur in the disposition because, given the Commission's refusal to grant the forbearance petition, there is no practical difference in this case between remanding, on the one hand, and vacating and remanding on the other. *Contrast Checkosky v. SEC*, 23 F.3d 452, 490-493 (D.C. Cir. 1994) (opinion of Randolph, J.). The court, rather than finding the Commission's decision arbitrary and capricious, decides that it cannot come to a judgment without further explanation from the Commission concerning its *subsequent* actions. In this exceptional circumstance, remand for further explanation is appropriate. *Contrast id.* at 490-91; *Detroit Newspaper Agency v. NLRB*, 435 F.3d 302, 312-314 (D.C. Cir. 2006) (Henderson, J., dissenting).