# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued January 5, 2009         Decided March 10, 2009

No. 07-1360

M2Z NETWORKS, INCORPORATED,
APPELLANT

v.

FEDERAL COMMUNICATIONS COMMISSION,
APPELLEE

NETFREEUS, LLC, ET AL.,
INTERVENORS

———

Consolidated with 07-1441

———

On Appeal and Petition for Review of an
Order of the Federal Communications Commission

———

*Viet D. Dinh* argued the cause for appellant/petitioner. With him on the briefs was *Perry O. Barber.*

*Stephen G. Kraskin* and *David Honig* were on the brief for *amici curiae* Minority Media and Telecommunications Council and Broadband Wireless Partners in support of petitioner.

*Darius B. Withers*, *Michael R. Gardner*, and *John T. Delacourt* were on the brief for *amici curiae* College Parents of America, et al. in support of petitioner.

*Joel Marcus*, Counsel, Federal Communications Commission, argued the cause for appellee/respondents. On the brief were *Thomas O. Barnett*, Assistant Attorney General, United States of America, *Robert B. Nicholson* and *Robert J. Wiggers*, Attorneys, *Matthew B. Berry*, General Counsel, Federal Communications Commission, *Joseph R. Palmore*, Deputy General Counsel, *Daniel M. Armstrong*, Associate General Counsel, and *James M. Carr*, Counsel. *Laurence N. Bourne*, Counsel, Federal Communications Commission, entered an appearance.

*Jonathan E. Allen*, *Joe D. Edge*, *Jeffrey J. Lopez*, and *Christopher C. Sabis* were on the brief for intervenors NetfreeUS, LLC and Open Range Communications, Inc.

*Michael F. Altschul*, *Ian Heath Gershengorn*, and *Elaine J. Goldenberg* were on the brief for intervenor for appellee CTIA - The Wireless Association. *Donald B. Verrilli Jr.* entered an appearance.

Before: SENTELLE, *Chief Judge*, and ROGERS and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* SENTELLE.

SENTELLE, *Chief Judge*: In this consolidated proceeding, M2Z Networks, Inc. (M2Z) challenges two related decisions of the Federal Communications Commission (FCC or Commission). First, it appeals the dismissal of its application for a nationwide, 15-year exclusive license to the 2155-2175 megahertz (MHz) spectrum to provide wireless broadband

Internet access. Second, it petitions for review of the denial of its petition for forbearance on that application. Despite the ingenious arguments of petitioner, we affirm the order of the FCC in all respects, dismissing M2Z's application without prejudice and denying its expansive petition for forbearance.

## I. Background

The FCC has designated 130 MHz of spectrum for advanced wireless services, to provide wireless Internet access and other voice and high-speed data services. *In re Service Rules for Advanced Wireless Services in the 2155-2175 MHz Band* (*NPRM*), 22 F.C.C.R. 17,035, 17,039-41 (¶¶ 6-7) (2007). Service rules have been adopted for one 90 MHz range, now called AWS-1. *In re Service Rules for Advanced Wireless Services in the 1.7 GHz and 2.1 GHz Bands*, 18 F.C.C.R. 25,162, 25,163 (¶ 1) (2003). Service rules for a second, 20 MHz, band called AWS-2 have been proposed but not approved. *See In re Service Rules for Advanced Wireless Services in the 1915-1920 MHz, 1995-2000 MHz, 2020-2025 MHz and 2175-2180 MHz Bands*, 19 F.C.C.R. 19,263 (2004). In September 2005, the FCC "designat[ed]" the 2155-2175 MHz band "for AWS use," in what came to be called AWS-3. *In re Amendment of Part 2 of the Commission's Rules to Allocate Spectrum Below 3 GHz for Mobile and Fixed Services to Support the Introduction of New Advanced Wireless Services, Including Third Generation Wireless Systems*, 20 F.C.C.R. 15,866, 15,872 (¶ 9) (2005). Service rules were not proposed for this AWS-3 band until September 2007. *See NPRM*, at ¶ 1.

On May 2, 2006, M2Z Networks filed an application with the FCC for a license to the entire AWS-3 band. Before us, M2Z claims that the band had lain largely fallow since it was first identified by the Commission in 1992 to provide for emerging telecommunications technologies. *See In re*

4

*Redevelopment of Spectrum to Encourage Innovation in the Use of New Telecommunications Technologies* (*1992 Notice*), 7 F.C.C.R. 1542, ¶ 19 (1992). This characterization may not be entirely accurate, as there were 1800 active licenses in the 2155-2175 MHz band in September 2007. *NPRM*, at ¶ 9. "These incumbents consist[ed] primarily of Fixed Microwave Service (FS) and Broadband Radio Services (BRS) licensees, who are subject to relocation by emerging technology (ET) licensees (including future AWS-3 licensees)." *Id.* Though M2Z may imply that the Commission has dragged its feet, the Commission counters that it has long "recognize[d]" the difficulty of replacing old licensees with emerging technology licensees. *1992 Notice*, at ¶ 19. Because the incumbents "provide important and essential services," the Commission proposed to "pursue this reallocation in a manner that w[ould] minimize disruption of the existing . . . operations." *Id.*

M2Z's plan was to deliver basic wireless broadband access to most of the country free of charge, ultimately making money by charging for premium service. According to the petitioner, for the plan to work, it needed an exclusive, nationwide license to the entire segment for 15 years. In September 2006, M2Z amended its application with a petition for forbearance under 47 U.S.C. § 160(c) and 47 C.F.R. § 1.53. M2Z asked the Commission to forbear from applying 47 C.F.R. §§ 1.945(b), (c), and "any other rule, provision of the Act, or Commission policy . . . to the extent such rules, statutory provisions, or policies [would] impede the acceptance and grant" of its application.

In January 2007, the FCC found M2Z's application acceptable for filing, without assessing the merits. Typically, applications for broadcast licenses are processed according to preexisting service rules. But, because there were no service rules for the proposed AWS-3 band, the Commission accepted

the application "pursuant to [its] general statutory authority" under 47 U.S.C. § 309(a). Upon accepting the application for filing, the FCC invited petitions to deny the application, and additional applications for the same band of spectrum. The Commission received voluminous comments, and six new applicants sought licenses for the spectrum.

On August 31, 2007, the Commission dismissed without prejudice all applications for access to the 2155-2175 MHz band, denied M2Z's petition for forbearance, and found "that the public interest is best served by first seeking public comment on how the band should be used and licensed." *In re Applications for License and Authority to Operate in the 2155-2175 MHz Band* (*Order*), 22 F.C.C.R. 16,563, 16,564 (¶ 1) (2007).

## II. Analysis

In this case, we review the FCC's application of its own procedures when granting licenses and its interpretation of related statutory provisions. In particular, we ask whether the Commission was reasonable in denying M2Z certain procedural advantages in its quest for a bandwidth license.

Before proceeding to the merits, we will briefly address the Commission's contention regarding administrative exhaustion. The FCC claims that we lack jurisdiction over seven distinct arguments advanced by M2Z. The Administrative Procedure Act (APA) does not pose a barrier to jurisdiction because judicial exhaustion requirements under the APA are prudential only. *See Darby v. Cisneros*, 509 U.S. 137, 146 (1993). But the FCC contends that 47 U.S.C. § 405 bars our consideration of any "question[] of fact or law upon which the Commission . . . has been afforded no opportunity to pass." 47 U.S.C. § 405(a). "Ordinarily," however, "disgruntled parties are not required to seek administrative reconsideration before challenging a

Commission order in this court, and exceptions to this general rule are to be construed narrowly." *Nat'l Ass'n for Better Broad. v. FCC* (*NABB*), 830 F.2d 270, 274 (D.C. Cir. 1987). Most importantly, governing precedent dictates that section 405(a) constitutes "an exhaustion requirement, rather than . . . a jurisdictional prerequisite." *Petroleum Commc'ns, Inc. v. FCC*, 22 F.3d 1164, 1170 (D.C. Cir. 1994). Additionally, in *Freeman Engineering Associates, Inc. v. FCC*, we recognized that section 405 "contains the traditionally recognized exceptions to the exhaustion doctrine," like futility. 103 F.3d 169, 183 (D.C. Cir. 1997) (quoting *Omnipoint Corp. v. FCC*, 78 F.3d 620, 635 (D.C. Cir. 1996)). The exhaustion requirement ensures that the Commission has the opportunity to pass on all issues in the case before the issues are presented for review by the court. Importantly, we construe each of M2Z's objections to address the substantive content of the FCC's legal conclusions that would necessarily have been implicated in their application and petition, rather than merely to protest procedural imperfections. Ordinarily petitioners must give agencies an opportunity to cure "technical defect[s]" before seeking review by this court. *NABB*, 830 F.2d at 274. Because we conclude that the Commission has "had an opportunity to pass" on each of M2Z's arguments that we discuss today, we may proceed to the merits.

A. *Forbearance Under 47 U.S.C. § 160*

We review the FCC's interpretation of its statute with deference under the familiar framework of *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See EarthLink, Inc. v. FCC*, 462 F.3d 1, 7 (D.C. Cir. 2006). In addition, the Commission's judgments on the public interest are "entitled to substantial judicial deference." *FCC v. WNCN Listeners Guild*, 450 U.S. 582, 596 (1981).

In 47 U.S.C. § 160, Congress provided that "the Commission shall forbear from applying any regulation or any provision" of the relevant statute "if the Commission determines that . . . forbearance from applying such provision or regulation is consistent with the public interest." 47 U.S.C. § 160(a)(3). M2Z petitioned the Commission to forbear from applying 47 C.F.R. §§ 1.945(b) and (c). Section 1.945(b) requires the Commission to wait 31 days before acting on applications for licenses not subject to competitive bidding. 47 C.F.R. § 1.945(b). Section 1.945(c) requires, among other things, that all license applications granted without a hearing must be from applicants who are "legally, technically, financially, and otherwise qualified." 47 C.F.R. § 1.945(c)(2). Therefore, M2Z argues that the Commission should have granted its petition to for forbear from two provisions. The first provision would have required the FCC to wait 31 days after it accepted M2Z's application for filing; this was mooted months before the Order issued. The second would have required the FCC to hold a hearing unless it could officially notice M2Z's qualifications.

### 1. *Forbearance and the Public Interest*

M2Z also petitioned the Commission, in a strikingly broad and inclusive request, to forbear from applying "*any other rule, provision of the Act, or Commission policy* . . . to the extent such rules, statutory provisions, or policies [would] impede the acceptance and grant" of its application. (Emphasis added.) Under the statute, the Commission should forbear from applying those rules if it determines that *forbearance* "is consistent with the public interest." 47 U.S.C. § 160(a)(3). M2Z, however, makes the startling assertion that the Commission should forbear from applying those rules if *M2Z's application* "is consistent with the public interest." It argues that, because both statutory provisions discuss "the public interest," the FCC may only make one inquiry to answer the independent questions posed by the

two sections. Section 309(a) announces the standard under which the Commission is to consider applications—"whether the public interest, convenience, and necessity will be served by the granting of such application." 47 U.S.C. § 309(a). Section 160(a)(3) announces the standard under which the Commission is to consider forbearing from applying its rules—whether "forbearance from applying such provision or regulation [would be] consistent with the public interest." 47 U.S.C. § 160(a)(3). As M2Z frames the issue, "[s]ince M2Z requested forbearance from any laws or rules that stood in the way of granting its application, the questions presented to the Commission merged into one: Would it be in the public interest to grant M2Z's application?" This argument obscures the difference between the questions. The first asks whether granting an application is in the public interest; the second asks whether forbearing from subjecting applications to certain regulations is in the public interest. They might both be true, but the truth of the first does not imply the truth of the second.

Because M2Z misconstrues the issue, it is naturally dissatisfied with the resolution. It claims that the FCC was required to walk through its application, and answer each of its proposed public interest claims on the merits. It therefore accuses the Commission of "deciding not to decide," an approach we rejected in *AT&T, Inc. v. FCC*, 452 F.3d 830 (D.C. Cir. 2006). In *AT&T*, the FCC denied a forbearance request asking it to "forbear from applying Title II common carrier regulation to IP platform services." *Id.* at 832. The Commission reasoned that it could not rule on the forbearance request because it "had yet to determine whether common carrier regulations even applied to IP platform services." *Id.* Although there are some factual parallels to this case, the law is not parallel. We observed in *AT&T* that the statute "gives the Commission authority to decide only whether 'forbearance . . . is consistent with the public interest,' not to decide whether

*deciding* whether to forbear is in the public interest." *Id.* at 836 (quoting 47 U.S.C. § 160(a)(3)). Although the Commission here ultimately chose to undertake a rulemaking, it first decided whether forbearance was in the public interest. It weighed the costs and benefits in the following manner:

> While [M2Z's] proposed approach[] may result in the issuance of a license sooner than conforming to established processes, such licensing would come at the expense of establishing a complete record that enables the Commission to consider all of the relevant factors in determining whether to grant a license without a hearing. In short, a potentially speedy but ill-considered licensing process does not serve the public interest. Moreover, as set out in detail below, the various filings made in this proceeding that oppose M2Z's . . . application[] or propose competing uses of the band support our conclusion that a grant of . . . th[is] . . . application[] without adhering to the requirements of Section 1.945 would disserve the public interest.

*Order*, at ¶ 9. The Commission did not refuse to rule on the forbearance request. It ruled, just not the way M2Z wanted it to.

> 2. *Forbearance and Considering Competitive Market Conditions*

M2Z also contends that the FCC failed to address whether forbearance would promote competitive market conditions, as required by 47 U.S.C. § 160(b). M2Z says both that the Commission's treatment was cursory and that it defined the wrong market in its analysis. The Commission wrote the following: "We observe that the grant of any of the pending applications, by cutting off consideration of a competitive bidding licensing framework and precluding consideration of other potential applicants for this spectrum, would appear to

compromise the development of competitive market conditions." *Order*, at ¶ 10 n.34. M2Z sought a 15-year monopoly on valuable bandwidth; it should not be surprised that the FCC was terse in its analysis of this proposal's effect on competitive market conditions.

M2Z tries to analogize to the reversibly brief treatment given by administrative agencies in *Getty v. FSLIC*, 805 F.2d 1050 (D.C. Cir. 1986), and *Missouri Public Service Commission v. FERC*, 234 F.3d 36 (D.C. Cir. 2000). The petitioner in *Getty* was able to show that despite "two fleeting references" in the administrative record to a statutorily required factor, there was "no evidence that [the agency] paid any attention" to that factor. *Getty*, 805 F.2d at 1055, 1056. The agency's order only "contained a boilerplate recitation of the language" required. *Id.* at 1055. In *Missouri Public Service Commission*, the agency merely named the factors, and we held that "[a] passing reference . . . is not sufficient to satisfy the [agency's] obligation to carry out 'reasoned' . . . decisionmaking." *Mo. Pub. Serv. Comm'n*, 234 F.3d at 41. Though not lengthy, the Commission's order in this case was neither a boilerplate recitation of the required language nor a passing reference without any reasoning. The FCC named the factor ("competitive market conditions"), and gave two reasons why the application "would appear to compromise" that factor—namely, by "cutting off consideration of a competitive bidding licensing framework and precluding consideration of other potential applicants for this spectrum." *Order*, at ¶ 10 n.34. And, though the Order referred directly to the provider market, rather than the consumer market, it seems clear what the Commission meant. Without scrutinizing and comparing applications from various companies, the Commission feared that it would not choose the most efficient provider for this bandwidth. An auction would help it find this ideal provider, so it was not in the public interest to forbear from an auction.

In short, the FCC's analysis of the effects of M2Z's breathtakingly broad petition on competitive market conditions was so plainly unobjectionable that it didn't warrant any further discussion by the Commission.

B. *Considering the Public Interest Under 47 U.S.C. § 157*

M2Z next argues that the nature of its project should have earned it preferential treatment under 47 U.S.C. § 157. That section says that "[a]ny person or party (other than the Commission) who opposes a new technology or service proposed to be permitted under this chapter shall have the burden to demonstrate that such proposal is inconsistent with the public interest." 47 U.S.C. § 157(a). M2Z argues that its proposal falls within this language because it uses new technologies, combines them in an innovative way, and provides a new service, and that no party has met the burden to show that its proposal is inconsistent with the public interest.

In its *Order*, the Commission said that M2Z proposes "us[ing] technologies that other service providers are already using" and that these technologies "are all proven technologies that have been deployed in other bands." *Order*, at ¶ 13. It supported this conclusion by noting the "relatively slow speed" of the technologies proposed by M2Z. *Id.* at ¶ 14. Therefore, the Commission reasoned, it should not be considered a new technology or service. The Commission further noted that, under the statute, it is "expressly exclude[d]" from having to demonstrate that a proposal is not in the public interest. *Id.* at ¶ 16; *see also id.* at ¶ 16 n.55. Finally, the Commission held that, because of the slow speed and less-than-aggressive expansion schedule, M2Z's proposal was inconsistent with the public interest. *Id.* at ¶ 15.

We begin by accepting the Commission's interpretation regarding the burden-shifting portion of the statute, which, again, reads that "[a]ny person or party (*other than the Commission*) . . . shall have the burden." 47 U.S.C. § 157(a) (emphasis added). It is certainly a reasonable interpretation of this statute to say that the Commission does not have to meet any burden. M2Z's only response is to say that the FCC's interpretation removes shifting of the burden from the statute entirely. It argues that 47 U.S.C. § 157(b)[1] calls for the Commission to be a "neutral arbiter" assessing whether a plan's "opponents carry their burden." Therefore, M2Z reasons, the phrase "other than the Commission" prevents the Commission from being a party that could even opine, independently, on whether the proposal is inconsistent with the public interest.

Though M2Z's interpretation might be reasonable, that question is not presented in this case. We only need to decide whether the Commission's interpretation was reasonable. *See Chevron, U.S.A., Inc.*, 467 U.S. at 843-45. M2Z argues that the Commission's interpretation could not be reasonable: because the Commission must always decide in the end, and it may never have the burden shifted against it, the burden may never be shifted, and therefore that portion of the statute is surplusage. But this reasoning is flawed. The statute obviously governs when the Commission is weighing evidence presented by third parties—when, for example, such parties make petitions to deny an application for spectrum. When the Commission evaluates these parties' petitions, the burden is applied against them. And

---

[1] 47 U.S.C. § 157(b) reads as follows: "The Commission shall determine whether any new technology or service proposed in a petition or application is in the public interest within one year after such petition or application is filed. If the Commission initiates its own proceeding for a new technology or service, such proceeding shall be completed within 12 months after it is initiated."

when the Commission is undecided or in equipoise, the burden is never removed, making every word of the statute count. We therefore hold that it was reasonable for the FCC to conclude that 47 U.S.C. § 157 does not give the Commission the burden of proving that M2Z's proposal was not in the public interest.

With this established, the rest of the issue becomes more straightforward. In particular, the parties' technical dispute over whether M2Z's proposal was a new technology or service becomes less important. We need not decide whether the Commission confused orthogonal frequency-division multiple access (OFDMA) with orthogonal frequency-division multiplexing (OFDM) technologies. We also need not decide whether M2Z waived this argument when it wrote that it sought a license "on the basis of the broad range of public interest and consumer welfare benefits . . . , rather than on the basis of technological innovations alone." And, finally, we need not decide whether M2Z's application is better considered as a new service, because it would be uniquely free and nationwide, or as an old service, because it would offer wireless broadband Internet access like many other providers.

Even assuming that M2Z proposed a new technology or service, we must affirm the Commission's public-interest decision as long as it is not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This we find easy to do. The Commission found that "the transmission speeds proposed by M2Z [we]re unremarkable compared to other broadband services currently being deployed." *Order*, at ¶ 14. It further found that "in light of the relatively slow speed proposed and the evolving nature of broadband internet access service, the grant of such an application would not serve the public interest." *Id.* Noting that "the construction benchmarks proposed by M2Z [we]re not particularly aggressive," and that they "f[e]ll[] short of the build

out standards that [the FCC] ha[s] imposed in other contexts such as 700 MHz band," the FCC found that "granting [M2Z's] application would prevent, rather than facilitate, widespread broadband deployment." *Id.* at ¶ 15. We hold that, the Commission having given sufficient reasons, nothing in 47 U.S.C. § 157 prevents the Commission from deciding that M2Z's proposal was not in the public interest.[2]

C. *Competitive Bidding Under 47 U.S.C. § 309(j)*

Under 47 U.S.C. § 309(j), the FCC must generally process "mutually exclusive applications . . . through a system of competitive bidding." 47 U.S.C. § 309(j)(1). The statute, however, makes an exception to this general call for auctions. Specifically, nothing in section 309(j) shall "be construed to relieve the Commission of the obligation in the public interest to continue to use engineering solutions, negotiation, threshold qualifications, service regulations, and other means in order to avoid mutual exclusivity in application and licensing proceedings." 47 U.S.C. § 309(j)(6)(E). M2Z uses this provision to repeat its argument that the Commission failed to assess all of its public interest evidence. It claims that the Commission must make a public interest finding to determine whether holding an auction is appropriate. Because the Commission did not expressly evaluate all of M2Z's comments, M2Z argues that the Commission failed to live up to its statutory duties and should be reversed for acting arbitrarily and

---

[2] M2Z's insistence that the Commission's Order came after the end of 47 U.S.C. § 157(b)'s one-year statute of limitations is unavailing. Although M2Z filed its original application on May 5, 2006, it first mentioned 47 U.S.C. § 157 in its forbearance petition of September 1, 2006. The Commission's Order was released August 31, 2007. By piggy-backing a petition on its application, M2Z cannot force the FCC to act in less time than the statute permits.

capriciously.

This argument fails for many of the reasons mentioned before: M2Z again misconstrues the question presented to the agency. Nothing in the statute requires the Commission to specifically address every piece of evidence presented by M2Z. The Commission was required only to respond to the petition for forbearance (which it denied) and possibly to determine under 47 U.S.C. § 157 whether M2Z proposed any new technology or service that was in the public interest (which it decided M2Z had not). The words "public interest" appearing in 47 U.S.C. § 309(j)(6)(E) do not require additional explicit action by the FCC, except to address them in its response for M2Z's petition for forbearance under 47 U.S.C. § 160 "from Section 309(j)(1)."

Furthermore, the Commission did assess the public interest when considering whether to dispense with an auction. It explained that

> before authorizing spectrum uses, [the FCC] typically first conduct[s] a rulemaking proceeding to obtain public comment on how the band should be used and licensed. Beginning with the promulgation of Section 309(j), we have most commonly determined, after consideration of the public comment filed in the applicable rule making, that a licensing framework that permits the filing and acceptance of mutually exclusive applications, which are then required by statute to be resolved through competitive bidding, would best serve the public interest for the types of spectrum use proposed by M2Z . . . . [T]his type of framework best serves the public interest because it is the one most likely to result in the selection of licensees that will value the spectrum the most and put it to its highest and most efficient use.

16

*Order*, at ¶ 10 (footnote omitted). The Commission decided that "even given the potentially longer timeline to the provision of actual service," it would rather auction the space than "give [M2Z] spectrum for free." *Id.* at ¶ 11. Leaving open the possibility of "an alternative licensing framework" (i.e., something other than an auction), the Commission refused forbearance because it "would be inconsistent with the public interest." *Id.* "[A]t this point," the Commission explained, "the record does not justify" deviation from the normal process of competitive bidding. *Id.*

M2Z is correct that the Commission had to consider the public interest in deciding whether to forgo an auction. Whether this is characterized as an analysis under section 309 or a section 160 forbearance analysis matters little. And, as we have noted, the Commission considered the public interest when deciding whether to forgo an auction. It is not required to perform that analysis exactly the way M2Z would have performed it. As FCC precedent in support of its position, M2Z cites *In re Improving Public Safety Communications in the 800 MHz Band*, 19 F.C.C.R. 14,969 (2004). That case noted only that the Commission "ha[d] the authority" to forgo auctions—a point which is not disputed. *Id.* at ¶ 72 n.236. It is worth noting, however, that the Commission did discuss forgoing auctions by "impos[ing] threshold qualifications" on the applicants, *id.*; M2Z's forbearance petition asks the Commission to put aside just such qualifications screening. M2Z also cites *In re Flexibility for Delivery of Communications by Mobile Satellite Service Providers in the 2 GHz Band, the L-Band, and the 1.6/2.4 GHz Bands*, 18 F.C.C.R. 1962 (2003), but that case specifically held that section 309(j)(1) did not apply at all, because the licenses were not "initial." *See id.* at ¶¶ 219-29. Because the Commission reasonably performed every statutory duty at issue, its *Order* was not arbitrary or capricious, and was not contrary to 47 U.S.C. § 309(j).

## III.  Conclusion

Although M2Z presents a number of creative arguments, none of them has serious legal merit.  The FCC *Order* should therefore be affirmed in all respects.

*So ordered.*